| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>COLLERAN, O'HARA & MILLS, L.L.P.<br>Thomas P. Keane, Esq.<br>100 Crossway Park Drive West, Suite 200<br>Woodbury, New York 11797<br>P: (516) 248-5757<br>F: (516) 742-1765<br>E: tpk@cohmlaw.com<br><br>*Counsel to Defendant* Tile Setters and Tile Finishers Union Of New York And New Jersey, Local No. 7 Of the International Union of Bricklayers and Allied Craftworkers | |
| In Re:<br><br>KIMO TILE @ MARBLE, LLC d/b/a KIMO TILE & MARBLE, LLC,<br><br>         Debtor. | Chapter 11<br><br>**Case No.:** 24-20009-JNP<br><br>**Adv. Proc. No.:** 24-1602-JNP |
| KIMO TILE @ MARBLE, LLC d/b/a KIMO TILE & MARBLE, LLC,<br><br>         Plaintiff,<br><br> v.<br><br>TILE SETTERS AND TILE FINISHERS UNION OF NEW YORK AND NEW JERSEY, LOCAL NO. 7 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS; and TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, TRUSTEES OF THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY RETIREE WELFARE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY VACATION FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY SUPPLEMENTAL FUND, TRUSTEES OF THE | |

1

| |
|---|
| LOCAL 7 TILE INDUSTRY PROMOTIONAL FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY TRAINING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY BUILDING FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY DEFENSE FUND, TRUSTEES OF THE LOCAL 7 TILE INDUSTRY LOCAL POLITICAL ACTION COMMITTEE, TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, THE INTERNATIONAL MASONRY INSTITUTE, AND THE TRUSTEES OF THE BRICKLAYERS AND ALLIED CRAFTWORKERS POLITICAL ACTION COMMITTEE,<br>                          Defendants. |

**DEFENDANTS AFFIDAVIT IN OPPOSITION TO PLAINTIFF'S ORDER TO SHOW CAUSE**

**THOMAS P. KEANE**, duly admitted to practice law in the courts of the State of New York, hereby affirms, pursuant to CPLR Rule 2106, the following statements to be true under the penalties of perjury:

1. I am admitted before this Court and am an Associate at the firm of Colleran, O'Hara & Mills L.L.P., attorneys for TILE SETTERS AND TILE FINISHERS UNION OF NEW YORK AND NEW JERSEY, LOCAL NO. 7 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS ("Local 7" or "Union") and I am familiar with the facts and circumstances in this action.

2. I submit this reply affirmation in support of Local 7's Opposition to Plaintiff's Application for an Order to Show Cause in this action.

2

# ARGUMENT

**I.  Plaintiff has not met the standard required to issue injunctive relief under 11 U.S.C. § 105(a).**

3. Plaintiff, KIMO TILE & MARBLE, LLC ("Debtor"), asks this Court to enjoin Local 7 from interfering with the Debtor's contractual arrangements and refusing to provide manpower to the Debtor.

4. Chapter 11, Section 105(a) of the Bankruptcy Code reads in relevant part "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). To issue an injunction under § 105, courts will look to the same standards that govern injunctive relief issuance in non-bankruptcy cases. *See, e.g., Matter of Brennan*, 198 B.R. 445, 452 (D.N.J. 1996), *Lane v. Phila. Newspapers, LLC* (*In re Phila. Newspapers, LLC*), 423 B.R. 98, 105 (Bankr. E.D. Pa., 2010), *In re W.R. Grace & Co.*, 386 B.R. 17, 32 (Bankr. D. Del. 2008).

5. Issuance of a preliminary injunction is understood to be an "extraordinary remedy, which should be granted only in limited circumstances.'" *Kos Pharmaceuticals Inc. v. Andrex Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)).

6. A court will determine if a moving party is entitled to a preliminary injunction by considering the following four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. *LTL Mgmt., LLC v. San Diego Cnty. Emps. Ret. Ass'n* (*In re LTL Mgmt., LLC*), 640 B.R. 322, 335 (Bankr. D.N.J. 2022) (citing *McTernan v. City of York, Pa.*, 577 F.3d 521, 527 (3d Cir. 2009).

3

7. Plaintiff's Application for an Order to Show Cause fails to establish the four (4) factors necessary for Plaintiff to be granted the requested relief as to Local 7. The actual facts of this case demonstrate that Local 7 is not interfering with Plaintiff's operations. More importantly, Local 7 has not denied manpower to the Debtor since it filed its petition; instead, Plaintiff has failed to request the manpower.

### A. The Plaintiff has not shown a reasonable probability of success on the merits because the Union's actions have not affected Plaintiff's ability to reorganize.

8. The court in *In Re LTL Mgmt., LLC* states "[i]in the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize." *In re LTL Mgmt., LLC*, 640 B.R. at 335 (quoting *In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 660 (E.D. Pa. 2011)). In that case, the plaintiff requested an extension of the automatic stay to preclude a securities action under either 11 U.S.C § 362(a) or a preliminary injunction under 11 U.S.C. § 105(a) for the same purpose where appropriate. The court granted the requested injunctive relief because a continuation of the defendants' actions would have impacted the plaintiff-debtor's reorganizational efforts. *See id.* at 342. In the case at bar, the Union has done nothing to hinder the Plaintiff's ability to successfully reorganize.

9. Plaintiff's Application does not articulate a basis to conclude that it would be able to successfully reorganize. Plaintiff merely observes that this is a necessary element to establish that an injunction is warranted. Local 7 does not offer an opinion as to whether or not the Debtor's efforts at reorganization are likely to succeed. Local 7 contends that an injunction is not warranted because it has not refused to provide manpower. The Debtor claims an injunction is necessary to prevent the Union from denying it manpower to complete its projects; however, this has not been the case since the petition was filed.

10. To the extent that Plaintiff has requested manpower since the filing date, the Union has not refused to provide manpower. Indeed, the Union has tried to assist the Plaintiff by asking where the workers were needed and when they would be needed on multiple occasions. *See* Exhibits D & E to the Affidavit of Christopher Avallone ("Avallone Aff.").

11. Plaintiff has failed to articulate grounds that would permit the Court to conclude that it can successfully reorganize its business. More importantly, Plaintiff has failed to demonstrate that an injunction as to the Union is necessary to ensure that it can successfully reorganize its business. Therefore, the Court should deny the application for an injunction as to Local 7.

**B. The Plaintiff's own conduct demonstrates that it will not be irreparably injured by the denial of injunctive relief.**

12. The Third Circuit holds that "[i]n order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *ADP, Inc. v. Levin*, No. 21-2187, 2022 U.S. App. LEXIS 10990, at *2 (3d Cir. Apr. 21, 2022).

13. To the extent that Plaintiff's Application for an Order to Show Cause alleges it will suffer an irreparable harm, the basis for that harm comes from not extending the automatic stay to the pending lawsuits filed against the Debtor's principal by the Pension Funds. *See* Dkt. 2, Plaintiff's Application at ¶¶ 101, 119. According to the Plaintiff, "the Debtor and the Debtor's estate will suffer irreparable harm if the Pension Fund Actions are not enjoined and/or the stay not extended to Sasha." *Id.* at ¶ 119. The Union is not a party to the Pension Fund's lawsuit against Plaintiff's principal. Plaintiff does not identify any conduct on the part of the Union that would cause irreparable harm to the Debtor's estate.

14. Plaintiff cannot show that Local 7 denied it manpower, because Plaintiff has either failed to make the request or failed to advise the Union as to when, where, or how many workers were needed. *See* Exhibits D & E to Avallone Aff.

5

15. Plaintiff has not identified any potential harm that could not be addressed by a legal or equitable remedy post-trial. Moreover, the Debtor's own actions of failure to request manpower properly undermines the argument that the Union is irreparably harming the Debtor's bankruptcy reorganization or the business generally.

### C. The Plaintiff should not be granted injunctive relief against the Union because an injunction will result in greater harm to the Union.

16. Plaintiff falsely claims that the Union has threatened some of its members should they continue to associate with the Debtor. *See* Dkt. 2, Plaintiff's Application ¶ 110. This is manifestly untrue. Local 7 members, who have previously worked for the Debtor, have been charged with violating the Union's Constitution and Bylaws. *See* Avallone Aff. at ¶ 18 ("The members are not being charged with working for Kimo; they are being charged with specific violations of the Bylaws and Constitution.") Any member who violated the Union's Constitution and Bylaws would be treated the same way, regardless of who their employer was. Plaintiff cannot demonstrate that the Union's enforcement of its own Constitution and Bylaws will cause irreparable injury to Plaintiff.

17. The Union must be able to police its members in accordance with its internal by-laws, Constitution, and policies. This includes the ability to charge or discipline Union members for improper conduct.

18. Moreover, "[t]here is a well-established, soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions." *Kehoe v. Int'l Ass'n of Theatrical State Emples. Local 21*, 2016 U.S. Dist. LEXIS 66391, *33, *citing*, *Local No. 48, United Bhd. of Carpenters & Joiners of Am. v. United Bhd. of Carpenters & Joiners of Am.*, 920 F.2d 1047, 1051 (1st Cir. 1990).

19. Interference with the Union's management of its relationship with its members will harm Local 7 significantly more than Plaintiff will be harmed if it does not receive an injunction against the Union. Plaintiff can proceed with its reorganization without obtaining an injunction against the Union.

In comparison, the injunction will potentially prevent Local 7 from enforcing its Constitution and Bylaws. It will encourage members to flout their agreed upon responsibilities under the Union's governing documents. This will in turn destroy Local 7's cohesion and prevent it from acting an effective bargaining representative for all of its members. Labor organizations are founded upon the principles of solidarity and common interest; interfering with that foundation in this case will harm all Local 7 members.

20. In comparison, the Debtor cannot show that it will suffer an irreparable injury. Plaintiff's failure to request Local 7 manpower following the filing of the petition undermines its argument and demonstrates they are not entitled to the relief they seek.

### C. **The Plaintiff should not be granted injunctive relief against the Union because the effect would run contrary to public interest.**

21. Plaintiff cannot demonstrate that there is a strong public interest in favor of issuing an injunction against the Union. Plaintiff cannot show that the Union interfered with its contracts or its ability to complete work. The Union has not refused to provide manpower; it is actively discussing providing manpower to the Debtor.

22. The Debtor argues that there is a strong public interest in paying subcontractors on public works projects. The Debtor does not articulate how the proposed injunction against the Union would advance the alleged public interest.

23. In comparison, the public interest in preserving Local 7's rights under its collective bargaining agreement adheres to the Bankruptcy Code's procedural requirements of 11 U.S.C. § 1113(b).

## II. Injunctive relief against the Union must be denied because Plaintiff cannot establish that the Union engaged in Tortious Interference with Plaintiff's existing contractual relationships.

24. In New Jersey, "[t]o succeed on a claim for tortious interference, a plaintiff must demonstrate: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *In re Better Homes & Gardens Real Estate LLC v. Mary Holder Agency, Inc.*, Nos. 11-34280 (MBK), 11-2437 (MBK), 2012 Bankr. LEXIS 3774, *10 (Bankr. D.N.J. Aug. 9, 2012) (citing *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268, 817 A.2d 426 (App. Div. 2003)).

25. The Union has not interfered with any of Plaintiff's contracts.

26. The one instance cited by Plaintiff, with Shorelands Construction, is inapposite. Shorelands contacted the Union to determine if Plaintiff was in good standing. *See* Avallone Ex. At ¶¶ 6, 7. The Union confirmed that Plaintiff was not. *Id.* Plaintiff thus put Local 7 in a position to either have to lie to a general contractor, or otherwise be accused of interfering with Plaintiff's contracts.

27. Plaintiff has no right to demand that Local 7 would be required to knowingly make untruthful statements in order to avoid suit with the Plaintiff.

## III. Injunctive relief is Inappropriate because the Plaintiff Cannot Establish that the Union engaged in a Civil Conspiracy.

28. The Third Circuit recognizes a four-part test for a plaintiff to establish a prima facie case for civil conspiracy: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d 406, 414 (3d Cir. 2003) (citing *Naylor v. Harkins*, 27 N.J. Super. 594, 99 A.2d 849, 855 (N.J. 1953)).

8

29. The court should apply New Jersey law in the absence of federal law governing conspiracy in bankruptcy cases. *Ffrench v. Reid* (*In re Reid*), Nos. 08-18155 (RTL), 08-2159 (RTL), 2010 Bankr. LEXIS 2617, at *19 (Bankr. D.N.J. Aug. 3, 2010).

30. In analyzing a civil conspiracy claim, "[t]he gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong" alone which constitutes an actionable claim absent the conspiracy. *Board of Educ., Asbury Park v. Hoek*, 38 N.J. 213, 237 (1962).

31. Plaintiff offers no evidence to establish that an alleged conspiracy existed between Local 7 and the Funds to boycott Plaintiff's business beyond vague conclusory statements.

32. Even if the Court finds there to be an implied agreement between Local 7 and the Funds, the claim still must fail because the underlying conduct Plaintiff complains of is not unlawful.

33. Civil conspiracy requires an unlawful purpose of the underlying conduct, aside from the conspiracy claim itself. The Union did not engage in any unlawful conduct.

34. Plaintiff alleges that Local 7 and the Pension Funds are "working together to destroy the Debtor." *See* Declaration of Sasha Kissoondath, ¶ 17 ("Sasha Dec."). In support of this allegation, Plaintiff points to the letter with Shorelands Construction, in which Local 7 informs Shorelands that Kimo is not in good standing. *See* Exhibit B of Sasha Dec. This letter does not demonstrate a concerted effort by Local 7 and the Pension Funds to negatively affect Kimo's business operations or reorganization. Rather, this letter was sent upon request of Shorelands to formally record that Kimo was not in good standing under the terms of the CBA. *See* Avallone Aff., ¶¶ 4-8.

35. The letter to Shorelands does not demonstrate that Local 7 engaged in any unlawful conduct. The Union was simply informing a general contractor about the status of a signatory employer under the CBA. The Union truthfully informed Shorelands that Kimo was not in good standing. Plaintiff has not established that this communication is unlawful in any regard.

9

36. Even if Plaintiff established that the Union was acting unlawfully, Plaintiff's claim for civil conspiracy also must fail because Kimo does not establish that the Union and the Pension Funds were acting in concert. The letter between Local 7 and Shorelands does not implicate the Pension Funds, and any allegation that the Pension Fund induced the Union to send the letter is unfounded and conclusory.

### IV. Debtor Did Not Provide Notice to Counsel for Local 7.

37. Plaintiff alleges that it provided notice to counsel for Local 7 of the Application. The undersigned did not receive notice of the filing from Plaintiff until Plaintiff's counsel emailed the papers to me on the afternoon of Monday, October 21, 2024.

### CONCLUSION

38. Plaintiff has failed to establish that an injunction is warranted as to Local 7. The Union is willing to provide manpower and is actively communicating with Plaintiff's principal about its manpower needs for upcoming projects. Plaintiff already has the relief it purportedly seeks from the Union and the request for an injunction is moot. Accordingly, the request for an injunction should be denied.

Dated: Woodbury, New York
November 5, 2024

*Thomas P. Keane*
Thomas P. Keane, Esq.