# EXHIBIT B

# AGREEMENT

*Between*

THE GREATER NEW YORK AND NEW JERSEY TILE
CONTRACTORS ASSOCIATION, INC.

AND

THE TILE SETTERS AND TILE FINISHERS UNION OF
NEW YORK AND NEW JERSEY, LOCAL UNION NO. 7
OF THE INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFTWORKERS

*Dated: June 3, 2021*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE I: | The Bargaining Unit | 1 |
| ARTICLE II: | Territory | 1 |
| ARTICLE III: | Working Conditions | 2 |
| ARTICLE IV: | Preparations | 8 |
| ARTICLE V: | Union Security | 8 |
| ARTICLE VI: | Employment and Hiring Procedures | 9 |
| ARTICLE VII: | Traveling Contractors | 11 |
| ARTICLE VIII: | Affiliated and/or Related Companies | 12 |
| ARTICLE IX: | Hours, Wages and Fringe Benefits | 13 |
| ARTICLE X: | Residential and Other Reduced Rate Work | 21 |
| ARTICLE XI: | Holidays | 22 |
| ARTICLE XII: | Foremen | 23 |
| ARTICLE XIII: | Shop Stewards | 23 |
| ARTICLE XIV: | Apprentices | 24 |
| ARTICLE XV: | Notice of Execution of Contract | 26 |
| ARTICLE XVI: | Assignment of Contract/Subcontracting | 26 |
| ARTICLE XVII | Contract or Piece Work | 26 |
| ARTICLE XVIII: | Strikes and Lockouts | 27 |
| ARTICLE XIX: | Grievance and Arbitration Procedure | 28 |
| ARTICLE XX: | Clothing and Tools | 30 |
| ARTICLE XXI: | International Masonry Institute | 31 |
| ARTICLE XXII: | BAC PAC and Local PAC Check-off | 31 |
| ARTICLE XXIII | Payment Bonds | 32 |
| ARTICLE XXIV: | Work and Safety Methods | 32 |
| ARTICLE XXV: | Promotion Fund | 33 |
| ARTICLE XXVI: | Taft Hartley Benefit Funds | 33 |
| ARTICLE XXVII: | Employer Principals | 34 |
| ARTICLE XXVIII | Validity | 34 |
| ARTICLE XXIX: | Most Favorable Employer | 35 |
| ARTICLE XXX: | Terms of Agreement | 35 |
| ARTICLE XXXI: | Complete Agreement | 36 |
| | Agreement for Independent Employers | 38 |

**Attachments:**

| | | |
|---|---|---|
| SCHEDULE A: | "A" Rates: Zones 1 to 3 | 40 |
| SCHEDULE B: | "B" Rate Agreement | 49 |
| SCHEDULE C: | Standards of Excellence | 53 |

i

TRADE AGREEMENT BETWEEN THE GREATER NEW YORK AND NEW JERSEY TILE CONTRACTORS ASSOCIATION, INC. (hereinafter referred to as the "Association" or the "Employer" and on behalf of its respective members hereinafter referred to as "Contractor" or "Employer"), who are members at the time of the execution of this Trade Agreement or who may become members during the life of this Trade Agreement and any extension of renewals thereof, and the TILE SETTERS AND TILE FINISHERS UNION OF NEW YORK & NEW JERSEY LOCAL UNION NO. 7 OF THE INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN, 45-34 Court Square, Long Island City, New York 11101 (hereinafter referred to as "Local 7" or the "Union").

**WHEREAS,** the Association is comprised of Tile Contractors engaged in the installation of tile and related materials in New York City, New Jersey, Long Island, and certain other counties, identified below, within the State of New York.

**WHEREAS,** the Union is an unincorporated association of Setters and Finishers employed in the tile industry, performing the labor described herein.

Now, therefore, the parties agree as follows:

<h2 style="text-align:center">ARTICLE I<br>The Bargaining Unit</h2>

The Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all Employees within the bargaining unit, on all present and future job sites within the jurisdiction of Local Union No. 7, unless and until such time as the Union loses its status as the Employee's exclusive representative as a result of a National Labor Relations Board ("NLRB") election requested by the Employees. The Employer agrees that it will not request an NLRB election.

The Union agrees and hereby recognizes the Association as the exclusive bargaining agent for all Tile contractors who are members of the Association as their bargaining representative.

The Union agrees not to negotiate individually or to enter into any agreement; understanding or practice with any member of the Association or with any Employer represented by the Association for the term of this Collective Bargaining Agreement ("CBA" or "Trade Agreement") or any extension thereof.

<h2 style="text-align:center">ARTICLE II<br>Territory</h2>

The Employer recognizes the Union as the sole collective bargaining agent for Tile Setters, Tile Finishers and Apprentices employed by the Employer within New York City, the State of New Jersey, Long Island, and the following counties in the State of New York: Westchester, Rockland, Putnam, Orange, Sullivan, Dutchess and Ulster.

When an Employer who is a party to this contract is working within the jurisdiction of the Building Contractors Association of Atlantic County (BCAAC), or when an Employer who is a party to the contract between BCAAC and Local 7 is working within the jurisdiction of the Greater New York and New Jersey Tile Contractors Association (GNYNJTCA), such Employer shall abide by all terms of the agreement with Local 7 that is applicable to the geographic area where the work is performed, and shall not be considered a traveling contractor.   In either case, it is understood that contractors who are members of either Association shall abide by the contract terms applicable to Association members, and contractors who are not members of either Association shall abide by the contract terms applicable to non-association members.  Local 7 has agreed to allow the members of the GNYNJTCA and of the BCAAC portability of their association privileges with respect to Fringe Benefit Payment schedule requirements in all geographical areas under its jurisdiction.

<h1 style="text-align:center">ARTICLE III<br><u>Working Conditions</u></h1>

<u>Section 1.</u>

Tile Setters work includes, but is not limited to, the work defined as:

(A) The cutting or setting of all tile where used for floors, walls, ceilings, walks, promenade roofs, exterior veneers, stair treads, stair risers, facings, hearths, fireplaces and decorative inserts, together with any marble plinths, thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork, or other foundations or material that may be required to properly set and complete such work.

(B) The application of a float coat or coats of portland cement mortar prepared to proper tolerance to receive tile on floors, walls and ceilings regardless of whether the portland cement mortar coat is wet or dry at the time the tile is applied to it.

(C) The setting of all tile bonded with portland cement mortar, where the bed is floated, screeded, slabbed or buttered and where joints are not filled in the same operation.

(D) The setting of all tile by the adhesion method with organic and/or inorganic thin-bed bonding materials where such bonding material is applied to the backing surface and/or the back of tile units or sheets of tile.

(E) The setting of tile as herein provided shall include the installation of accessories and the insertion of decorative tile inserts in other materials.

(F) The mounting, setting, sealing and installation of prefabricated tile panels in the shop and at the job.

(G) The setting of accessories when built into tile walls.

(H) The setting of decorations, mantels and counters.

(I) Patching of old and new work.

(J) Thin-set waterproofing.

(K) All work usually and customarily performed by Tile Setters and Tile Finishers.

Section 2.

"TILE" is herein defined as the following products, which are not limited in size or thickness:

(A) All burned clay products as used in the tile industry, either glazed or unglazed,

(B) All composite materials marble tiles, glass, mosaics, brickettes, terra cotta, glass mosaics, and all substitute materials for tile made in tile like units, and

(C) All materials in the tile like forms of cement, metals, plastics and other materials, that are made for or intended for use as a finished floor surface, stair treads, promenade floors, walks, walls, ceilings, swimming pools and all other locations where tile is used to form a finished interior or exterior surface for practical use, sanitary finish or decorative purposes.

(D) The Tile Setters jurisdiction will include marble and granite as described below.

Flooring:

All jobs involving marble and granite and/or natural and man-made stone-type floor tiles of less than three quarters of an inch (3/4") thickness shall be assigned to and performed by Tile Setters and/or Tile Finishers. All jobs involving marble and granite and/or natural and man-made, stone-type floor tiles of three quarters of an inch (3/4") thickness or more and total more than three (3) square feet shall be assigned to and performed by Marble Setters and/or Marble Finishers.

Residential flooring of three quarters of an inch (3/4") thickness up to four (4) square feet installed using thinset over slab or thinset over cured mortar bed - first team from either Tile or Marble at Employer's discretion; second team from other craft not selected initially, alternating teams beyond that selection.

Flooring less than three quarters of an inch (3/4") in thickness is assigned to the tile trade; under the discretion of the Employer there can be a composite crew with the marble craft.

For residential, condos, hospitalities and apartments, if the craft assigned (Marble or Tile) has at least eighty (80%) percent of the work in the bathroom, that craft shall perform sills, shelves, tub decks and niches.

<u>Walls:</u>

All jobs involving marble and granite and/or natural and man-made, stone-type wall tile of less than three quarters of an inch (3/4") thickness shall be assigned to and performed by Tile Setters and/or Tile Finishers.

All jobs involving marble and granite and/or natural and man-made stone-type wall tiles of three quarters of an inch (3/4") thickness or more shall be assigned to and performed by Marble Setters and/or Marble Finishers.

For wall installations at three quarters of an inch (3/4") thickness up to two (2) square feet can be performed by the tile craft with thinset application.

<u>Tops:</u>

All jobs involving marble and granite and/or natural and man-made, stone-type tops or miscellaneous pieces in bathrooms and toilets shall be assigned to and performed by Tile Setters and/or Tile Finishers. Window sills and saddles will be considered the jurisdiction of the Tile Setters and Tile Finishers.

All jobs involving marble and granite and/or natural and man-made, stone-type tops or miscellaneous pieces (excluding window sills and saddles) outside of the bathrooms and toilets shall be assigned to and performed by Marble Setters and/or Marble Finishers.

Notwithstanding the above, a Tile contractor may do any small job, involving six (6) team days or less of marble work, with tile workers at tile wages. The Tile contractor cannot break a job up into phases in order to satisfy this agreement. A "rule of reason" shall apply to the implementation and enforcement of these changes.

(E) It is agreed that the hours of employment, wages, fringe benefit contributions and all other terms and conditions of employment shall be pursuant to the terms and conditions of this CBA It is expressly understood and agreed that the Employer is not bound to the terms and conditions of any existing Marble locals' CBAs. The Marble locals, however, shall be entitled to reallocate wage and fringe benefit contributions provided that the total wages and fringe benefit contributions package does not exceed the total wage and fringe benefit contributions package of the respective Tile locals' CBAs.

(F) The Employer shall not use Tile Setters or Tile Finishers to perform anchoring marble or granite work.

<u>Section 3.</u>

Tile Finishers work includes, but is not limited to, the work and terms defined below:

(A) On mortar jobs each Tile Setter shall be helped by one (1) Tile Finisher.

(B) On adhesive work, the Tile Finisher will help three (3) Tile Setters, providing no grouting is required.

(C) On thinset work, the Tile Finisher will help two (2) Tile Setters, and the Tile Finisher is to grout up to two hundred and fifty (250) square feet of floors or walls per day.

(D) Notwithstanding the foregoing, if the Employer decided to do a thinset or adhesive job on a one (1) Tile Setter one (1) Tile Finisher basis, then the Tile Finisher is to do all the grouting of the work, including catching up on the last day of the Tile Setters' work on the job.

(E) On unglazed wall installation, where one (1) Tile Finisher is helping two (2) Tile Setters, the Tile Finisher will grout one hundred (100) square feet of tile per day.

(F) On unglazed floor tile, the Tile Finisher will grout two hundred (200) square feet per day when helping two (2) Tile Setters.

(G) On epoxy work, the Tile Finisher may be required to help two (2) Tile Setters, but in no event shall the Tile Finisher be required to do any grouting regardless of whether the Tile Finisher is helping one (1) or two (2) Tile Setters. On a one to-one basis, on a latapoxy installation only, the Tile Finisher will do some grouting.

(H) On mortar jobs, the float coat shall be done on a one (1) Tile Finisher to one (1) Tile Setter basis. The setting of tile or marble on the float coat shall be on a one (1) Tile Finisher to one (1) Tile Setter or one (1) Tile Finisher to two (2) Tile Setters basis at the Employer's discretion.

(I) On a thinset specialty type installation, not to exceed two hundred seventy (270) square feet among three (3) Tile Setters, the Tile Finisher will help three (3) Tile Setters and do the grouting of the installation up to a total of two hundred seventy (270) square feet.

(J) On a specialty type installation on Mud (Mortar), not to exceed a total of one hundred thirty-five (135) square feet among the three (3) Tile Setters, the Tile Finisher will help three (3) Tile Setters and do the grouting up to a total of one hundred thirty-five (135) square feet.

(K) On marble baths, the Tile Finisher will help two (2) Tile Setters and grout three (3) hop-ups or two hundred fifty (250) square feet, whichever is greater.

(1) Tile Finishers' jurisdiction shall include the cleaning of tile, unpacking of all tile, and shall handle all materials, such as sand, cement, tile, lime, all types of tile panels, prefabricated tile units, and any other form of tile or material that may be used by the Tile Setters, after being delivered on the job. The Tile Finisher shall do all the work pertaining to the protective covering of all tiles.

(2) Caulking required when pre-grouted tile is used, or caulking required to be done by the Employer around door bucks, fixtures or internal corners after tile is installed, shall be done by Tile Finishers. Specialty caulking done as part of the tile installation procedure is not included.

The Employer retains the right to subcontract caulking at its discretion. The Tile Finisher shall do any/all work related to sealers and caulking. Article XVII regarding Subcontracting shall apply.

(3) Tile Finishers shall do the grouting of tile work, as set forth in this Agreement provided:

(a) That all material is placed on the floors by Tile Finishers.

(b) Tile Finishers may be required to obtain water for grouting and/or cleaning from one (1) floor up or down. Such condition, or reasonable requests to obtain incidental materials from other areas of the job shall not eliminate the requirement that Tile Finishers do the grouting of tile set forth in the Agreement.

(4) The Employer is to furnish suitable pails, sponges, hoe blades and mixing drills for the Tile Finishers and they shall be held strictly accountable for the return of such pails, sponges, hoe blades and mixing drills.

(5) In all buildings over four (4) stories in height, Employers shall furnish a block and fall, or other proper facilities for hoisting materials. No more than six (6) teams shall be required to use a single block and fall on regular mortar installations. Whenever materials are to be pulled beyond a distance of six (6) stories the Employer shall provide for one (1) additional Tile Finisher for each block and fall.

(6) All Tile Finishers are to handle and distribute all materials during the designated lunch period when directed by the Foreman on the job. Each Tile Finisher, assigned to help a Tile Setter, and performing such work, shall be paid double time for one (1) hour in compensation for their lost lunch period and, in addition, his regular straight time pay for the half hour after the lunch period ends so that such a Tile Finisher shall receive nine (9) hours pay over the span of a working day; and any other Tile Finisher, not assigned to a Tile Setter, performing such work, shall be paid double time only for the designated lunch period so that such a Tile Finisher shall receive eight (8) hours pay over the span of a working day. Should fifty (50%) percent or more of the Tile workers who are so employed on any job refuse to work the lunch hour when ordered, it shall be considered a violation of the Agreement, which is distinctly understood that Local 7 will not countenance.

(7) The parties hereto shall use their best efforts in the industry's and public's interest to increase production and reduce costs by maintaining maximum man hour output and to use all machinery, tools, appliances or methods which may be practical.

(8) The Employer shall use his best efforts to provide and make available for the employees proper and suitable scaffolds, fit and safe for use.

(9) Patchwork can be performed by a Tile Setter without a Tile Finisher so long as the work is not in excess of thirty (30) square feet.

PATCHING DOES NOT MEAN that if at the end of the day, there is still some extra work to be done in a room where no other trade is holding up completion, and which the Tile Setter can finish that next morning, or where the room can be finished by another Tile Setter without a Tile Finisher.

(10) The parties agree that Tile Finishers shall do a fair day's work in all cleaning of tile in accordance with the following schedule:

        (a) Twenty-four (24) average sized bathroom floors per day on regular tile installations.

        (b) One thousand (1,000) square feet per day on commercial installations.

        (c) Glazed tiles of any type are not required to be cleaned.

(11) With respect to grouting with one hundred (100%) percent epoxy, excluding Spectra lock and similar products, the Tile Finishers who do the grouting shall be paid ten ($10.00) dollars additional for each day's work with such grout. There will be no restrictions on production for such work.

Section 4.

All Setters must be pre-certified by the Union for all mud work. Tile Finishers may spread and make cuts for the Tile Setters provided they complete their Tile Finisher responsibilities.

Section 5.

(A) A new classification of Tile Tender shall become effective June 2, 2017. The wage rate shall be forty (40%) percent of the Tile Finisher classification.

(B) Tile Tenders may be used on residential and finish work only.

(C) Any residential and finish work contracted on or before June 2, 2017, an Employer may use a ratio of two (2) Tile Finishers to one (1) Tile Tender per job so long as there are at least two (2) Tile Finishers on that job.

(D) Any residential and finish work contracted after June 2, 2017, an Employer may use a ratio of one (1) Tile Finisher to one (1) Tile Tender per job.

(E) Employers violating the ratio will be subject to a monetary penalty of $700.00 per day. Any Employer determined by the Joint Trade Board to have violated the CBA may be subject to suspension of the opportunity to employ a Tile Tender for up to one (1) year.

(F) Tile Tenders may apply to the Union to become Tile Finishers after four (4) years of employment. A Tile Tender may only apply to the Union to become a Tile Finisher if he/she has performed, at a minimum, 750 hours of covered work in each of the four (4) years he/she was a Tile Tender.

Section 6.

Rail systems with porcelain tile will be subsidized with $10.00 per hour and the Tile Finisher to Tile Setter ratio will be on an as needed basis.

A Tile certification program shall be established. Additionally, the membership shall be encouraged to participate and complete the thirty (30) hour OSHA course plus an additional ten (10) hours of site safety training equaling forty (40) total hours which entitles the member to an SST card.

## ARTICLE IV
### Preparations

Section 1.

All preparations for tile walls, ceilings and floors must be properly prepared with sand and cement, plumb and true and scored. The portland cement float coat must be properly prepared, plumb and true and shall be the exclusive work of the Tile Setters. The Union shall have the right to bring to the attention of the Employer any and all preparations that may be considered detrimental to proper and durable installation of work. It is understood that precautions to insure and guarantee the proper and durable installation of work are to conform with accepted practice in the industry. It is understood that preparations for adhesive installations are to be plumb and true and are to conform with accepted practice in the industry. Subsurface is to be dry, firm and clean for proper bond with adhesive. Rooms and any other work shall be cleaned to the proper level for the installation of the tile. Tubs shall also be cleaned of debris for the proper installation of the tile.

Section 2.

Both parties signing this Agreement do not recognize that any particular grade of tile should call for any special grade of installation, but all installations regardless of quality or kind of tile, should be made in a first class manner, provided Tile Setters/Tile Finishers are supplied with proper working equipment such as soaking tubs, mortar boards, scaffolds wherever required, straight edges, floating strips, mixing boxes, sufficient light and heat to insure proper installation of tile work and such materials as are specified by the Architect for the job in question, and providing the principles of the trade as to proper installation and durability are adhered to.

Existing elevators shall be made available to Tile Setters/Tile Finishers where the building is over seven (7) stories in height.

## ARTICLE V
### Union Security

Section 1.

(A) It shall be a condition of employment that each employee on or after the eighth (8th) day following the commencement of employment in the industry, or the date of execution of this Agreement, whichever is later, shall be, become and remain a member in good standing in Local 7, and that all employees who are members of Local 7 on the date of execution of this Agreement shall remain members of Local 7. If there is a violation of the foregoing provisions because of a

failure by an employee to tender periodic dues and the initiation fee uniformly required by Local 7, then upon request of the Union, the Employer shall terminate the employment of such employee.

(B) In the event that Congress shall amend or change the applicable law so as to provide for Union Security more favorable to the Union and its members than herein above set forth, then the provisions of such new or amended law, when effective, shall automatically be incorporated herein.

(C) Authorized representatives of the Union shall be allowed to visit jobs and to interview the Employer and employees covered by this Agreement but shall in no way interfere with or hinder the progress of work.

## ARTICLE VI
## Employment and Hiring Procedures

### NON-DISCRIMINATION

The Employer and the Union agree there will be no discrimination against any Employee with respect to race, creed, color, national origin, sex, age, handicap, marital status, sexual orientation or affection preference, disability, citizenship status or alienage, in all employment decisions, including but not limited to, recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, layoff and recall, termination, and all other terms and conditions of employment, except as provided by law.

### Hiring Procedures:

### Section 1. Associated Members

Except for the express exceptions contained in Article III §2(D), supra., it is agreed that on all jobs, for both straight time as well as overtime, the Employer shall select the first six (6) Tile Setter/Tile Finisher journeypersons and the Union shall designate the next three (3) Tile Setter/Tile Finisher journeypersons. If needed, the next two (2) Tile Setter/Tile Finisher journeypersons shall be selected by the Employer and the next two (2) Tile Setter/Tile Finisher journeypersons thereafter by the Union and continuing in such alternating manner until the job is fully staffed. This selection process shall only be applicable to Employers who are members of the Association.

The Union has the sole discretion to select any member it deems fit to serve as a Steward. If the person initially appointed as a Steward does not, in the Union's sole discretion, adequately perform his/her duties as a Steward, then the Union may replace him/her with another member, currently working on the job.

Preference in the assignment of overtime is to be given to those currently working on the job. Only if there is insufficient manpower to cover the overtime from those currently working on the job will the alternating assignment methodology as described in the first paragraph above in this section apply.

If the Union does not assign a Tile Setter/Tile Finisher to the job, the Employer may assign a Tile Setter/Tile Finisher. The Union agrees that for the duration of the job, it will not require that a Tile Setter/Tile Finisher designated by the Union replace a Tile Setter/Tile Finisher assigned to

the job by the Employer. Both parties agree that the Employer shall have the right to determine the number of Tile Setters/Tile Finishers to be employed on any job. Both parties further agree it is the right of any Employer to discharge any Tile Setter/Finisher that in its opinion is unsatisfactory.

### Section 2. Independent Contractors

(A) On thinset and mastic jobs, the Employer shall select the first (1st) Tile Setter/Tile Finisher required exclusive of non-working foremen and the Union shall select the second (2nd) Tile Setter/Tile Finisher. The Employer shall select the third (3rd) Tile Setter/Tile Finisher and the Union shall select the fourth (4th) Tile Setter/Tile Finisher on such jobs. The selection of all additional Tile Setters/Tile Finishers required thereafter shall alternate on a one-to-one basis between the Employer and the Union. Both parties agree that the Employer shall have the right to determine the number of Tile Setters/Tile Finishers to be employed on any job. Both parties further agree it is the right of any Employer to discharge any Tile Setter/Tile Finisher that in his opinion is unsatisfactory. On mud jobs the Employer shall elect (exclusive of any non-working foreman) the first two (2) Tile Setters/Tile Finishers required and the Union shall designate, the next two (2) Tile Setters/Tile Finishers. Thereafter, if more Tile Setters/Tile Finisher is required, the distribution shall be one (1) from the Employer and one (1) Tile Setter/Tile Finisher referred by the Union, making the total number of days work equal as the job progresses.

(B) The above is interpreted to mean that, when any job is fifty (50%) percent completed, Tile Setters/Tile Finishers referred through the Union shall have an equal number of days with the Tile Setters/Tile Finishers selected by the Employer; and if not, the Union shall have the right to stop the job in question until such time as the Employer makes arrangements to the Union's satisfaction, to complete the job with an equal number of days for both sides.

(C) This interpretation does not apply to one (1) employee jobs. To settle any dispute or difference of opinion as to a one (1) employee job, the Employer, when sending notice of execution of contract, as provided for herein, shall state on such notice that such job will only require one (1) Tile Setter/Tile Finisher to complete the work. This will give the Business Agent time to visit the job before the work is started, and, if the Business Agent disagrees with the Employer, the Business Agent shall so advise the Employer, and if they cannot agree, the matter is to be referred to the Joint Trade Board.

### Employment:

#### Section 1.

Employers shall be at liberty to employ and discharge whomsoever they see fit and Tile Setters/Tile Finishers shall be at liberty to work for whomsoever they shall see fit. The Employer retains the right to reject any job applicant referred by the referral hall. Any Tile Setter/Tile Finisher who is referred to a job in accordance with the provisions of this Article, and remains ready and willing to work, shall be guaranteed the first (1st) four (4) hours of a day's pay, regardless of whether the Tile Setter/Tile Finisher is actually permitted to work the first four (4) hours.

<u>Section 2.</u>

In the event the Union fails to refer necessary men within three (3) working days after notice in writing by an Employer to the Union and to the Joint Trade Board, the Employer may employ individuals to perform the work from any other source.

<u>Section 3.</u>

(A) Staggered start for Tile Finishers for setup in the morning and clean up in the afternoon so that the Tile Setters can work a full shift.

(B) Workers can be used to assist other signatory Local 7 crafts in the last two (2) hours of the shift if there is no other work available in their craft to complete the day.

(C) Utilize training facilities for all aspects of the industry (safety, shop steward, foreman, etc.). Employers will enforce foreman and supervisory training from their staff.

<u>Section 4.</u>

(A) Employers shall report jobs in writing, limited to job, location, contractor, anticipated start. Failure to report a job shall be subject to a one thousand ($1,000.00) dollar penalty for the first (1st) violation and a two thousand ($2,000.00) dollar penalty for each violation thereafter.

(B) Employers shall have one (1) month from the date of the execution of the Memorandum of Agreement to supply the list of current jobs to the Union.

(C) The Association shall notify its members that they are required to supply the Union with a complete listing of their existing jobs as of June 2, 2017 which began on or after January 1, 2017.

(D) The Union shall notify Independent Contractors who have had at least one (1) job since January 1, 2017 of the same obligation as stated in Section 4(a) above.

## ARTICLE VII
## Traveling Contractors

<u>Section 1.</u>

When the Employer has any work specified in Article III of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an Agreement with another affiliate of the International Union of Bricklayers and Allied Craftsmen, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in the annexed wage schedules, but in no case less than the established minimum wage scale of the Local Agreement covering the territory in which such work is being performed, plus all contributions specified in the jobsite Local Agreement. The provisions established in the jobsite Local

Agreement shall in all other matters govern the Employer. If employees are sent to work on a project in an area where there is no Local Agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

<u>Section 2.</u>

The provisions under this Traveling Contractors clause shall be limited to the following States for any member of the Greater New York and New Jersey Tile Contractors Association, Inc. who have assigned their bargaining rights to the Association: New York, New Jersey, Connecticut, Massachusetts, Pennsylvania and Rhode Island.

<u>Section 3.</u>

If the Employer's principal place of business is located outside the geographic jurisdiction of Local Union No. 7, the Employer shall select the first Tile Setter/Tile Finisher and the Union shall select all additional teams.

## ARTICLE VIII
## AFFILIATED and/or RELATED COMPANIES

<u>Section 1.</u>

No Tile Setter/Tile Finisher shall work for any Employer or individual who has failed to sign an Agreement with the Union or does not comply with the terms and conditions of employment in said Agreement.

<u>Section 2.</u>

In order to protect and preserve for the employees covered by this Agreement all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: if and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including joint venture wherein the Employer (including its officers, directors, owners partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

<u>Section 3.</u>

All charges by the Union of violations under Section 2 of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XIX of this Agreement. As a remedy for violations of this Section, the arbitration body provided for in Article XIX is empowered, at the request of the Union, to require an Employer to: (1) pay to affected employees covered by the Agreement the equivalent of wages lost by such employees as

a result of the violations, and (2) pay into the affected joint trust funds established under this agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union or such joint trust funds for violation of this Section; nor does it make the same or other remedies unavailable to the Union or such joint trust funds for violations of other sections or Articles of this Agreement.

Section 4.

If, as a result of violation of this Article, it is necessary for the Union to institute court action to enforce an award rendered in accordance with Article XIX, or to defend an action which seeks to vacate such an award, or for the Trustees of the joint trust funds to institute court action in the first instance to enforce Section 2 above, the Employer shall pay any accountant's and attorney's fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action in accordance with ERISA should the Union and/or the Funds prevail.

## ARTICLE IX
## Hours, Wages and Fringe Benefits

### Section 1: Hours

(A) Seven (7) hours will constitute a regular day's work except that eight (8) hours will constitute a regular day's work where the specific job is performed in the counties of Sullivan, Dutchess and Ulster in New York. However, it shall be an Employer's option, after notifying the Union, to work a seven (7) hour or eight (8) hour day at straight time. The seven (7) or eight (8) hour day selected must start on the first day of the job and shall continue for the duration of the job.

(B) To provide for a flexible start time, the Employer shall have discretion to start the workday at any time between 6:00 A.M. and 9:00 A.M., provided that employees are given reasonable advance notice of any change in the hours. If a job starts at 7:00 A.M. or earlier, the lunch period shall start between the hours of 11:00 A.M. and 12:00 noon and shall not exceed one half hour. Employees are required to take a lunch period.

(C) An Employer, after notifying the Union, may elect to assign work on the basis of four (4) ten (10) hour days at straight time. If this option is selected, it must begin on the first day of the job and shall continue for the duration of the job.

(D) Both the Union and the Employers have to address the problem of employees working overtime on the weekend and not working on Monday or replacing themselves. It is agreed that if this problem happens without a legitimate excuse, or on a second occasion, the Employer shall mail the employee's paycheck to the Union on behalf of the employee and deprive the employee of overtime assignment(s).

(E) For those employees governed by a seven (7) hour day, the following rules shall apply, subject to paragraph B, above:

13

(1) Regular working hours are Monday through Friday from 8:00 A.M. to 12:00 noon and from 12:30 P.M. to 3:30 P.M., except as provided for in paragraph B of this Article. When a specific job requires a 9:00 A.M. starting time, the regular seven (7) hours are Monday through Friday from 9:00 A.M. to 1:00 P.M., and from 1:30 P.M. to 4:30 P.M., except as provided for in paragraph B of this Article.

(2) Should a Tile Setter/Tile Finisher leave a job early by his own volition, his pay for that day shall be proportionately reduced. The Employer must deduct the proportioned hourly amount from such employee's pay for that day. In the event an employee leaves the job early, without a legitimate excuse, or on a second occasion, the Employer can mail the employee's layoff check to the Union Hall.

(3) Tile Setters/Tile Finishers may be laid off at the start of the lunch period or at the end of the workday. When laid off, a Tile Setter/Tile Finisher shall be notified of such action no later than one (1) hour before the time of such lay off and paid in full not later than one-half (1/2) hour before quitting time. Failure of the Employer to notify the Tile Setter/Tile Finisher of lay off and to pay wages in full as herein prescribed will obligate the Employer to continue the Tile Setter/Tile Finisher in his employ another one-half (1/2) day or to pay the equivalent in waiting time, be it the start of the lunch period or the end of the workday.

(4) Any Tile Setter/Tile Finisher who is sent to a job to work and is not ready solely because of the Employer's fault shall be paid one-half (1/2) day's pay.

(5) No Tile Setter/Tile Finisher shall be required to report to the Shop after regular working hours or before the start of a shift, except as provided for in paragraph B of this Article.

(6) As to the Tile Finishers only, anything in the Agreement to the contrary notwithstanding, the Employer has the absolute right to change the normal time period for Tile Finishers hired to load, unload and handle materials by commencing prior to the starting time or at the end of the workday.

(7) All conditions and employee ratios listed under the Employment and Hiring Procedures shall apply when assignments for overtime are required on a jobsite. The foreman will be the first representative from the Employer and the shop steward will be the first representative from the Union and the remainder of assignments will be on an alternating basis. When additional work force is required from sources other than the members currently employed at the jobsite the Employer must give the Union the opportunity to comply with the ratios stated in the Employment and Hiring Procedures.

### Section 2:  Wages

(A) The Union in its sole absolute discretion reserves the right to allocate any of the wage increases on the Wage Schedules attached herein to any of the Fringe Benefit Funds. All allocations shall be subject to all IRS regulations including, but not limited to, the IRS twenty-five (25%) percent rule. The Employers are to be notified of the allocation thirty (30) days prior to the effective date of the increase. The Employers agree not to unreasonably withhold their consent to

any Union proposal allocating any portion of the said increases to Fund contributions. Such proposal shall be made in writing within a reasonable time. There shall be full itemization of all deductions on a weekly and year to date basis where Employer's payroll system permits.

Base wages shall be increased as follows (not compounded). The parties retain the right to allocate any increase in whole or in part to funding to maintain benefits, except as stated below in Section 2 (K):

Base wages shall be increased <u>across the board</u> as follows:

> ➢ $.50 per hour applicable to the full rate with an amount less than $.50 per hour applicable to other wage schedules as reflected on the Rate Sheets effective June 7, 2021
> ➢ ½% effective December 6, 2021
> ➢ 1 ½% effective June 6, 2022
> ➢ 1 ½% effective June 5, 2023
> ➢ 1 ½% effective June 3, 2024

Any existing ongoing jobs as well as jobs already awarded out will be paid at the negotiated rate contained in the 2017-2021 CBA plus the 'across the board' wage increase after June 2, 2021.

NOTE: The Employer's obligation to report jobs. See Art. VI §4(A).

(B) Wage payments made by check must be made no later than 3:30 P.M. each Wednesday, and if not so made, then shall be paid in cash no later than 3:30 P.M. the following day provided, however, that if an employee consents thereto, payment by check may be made on Thursday. All wage payments shall be for the payroll week closing on the Sunday preceding the payment. In the event a payroll check is returned for insufficient funds, the Employer shall be required to pay two (2) additional days wages.

(C) For those employees governed by a seven (7) hour regular day, overtime is to be paid at the rate of one and one-half (1 1/2) times the regular rate of pay for work performed after 3:30 P.M. on any job that commences at 8:00 A.M. and is not completed by 3:30 P.M. For those employees governed by an eight (8) hour regular day, overtime is to be paid at the rate of one and one-half (1 1/2) times the regular rate of pay for work performed after 4:30 PM on any job that commences at 8:00 A.M. and is not completed by 4:30 P.M. The above hours shall be adjusted where the job commences at a different hour, as provided in Article IX, Section 1(B).

(D) Tile Setters/Tile Finishers who are required to work between the hours of 12:01 A.M. Sunday or on a Holiday and through 12:00 midnight Sunday or on a Holiday shall be paid double time at the straight time rate of pay for wages and applicable fringe benefit contributions for the duration of the shift.

(E) Tile Setters/Tile Finishers who are required to work between the hours of 12:01 A.M. Saturday through 12:00 midnight Saturday shall be paid one and one-half (1 1/2) times the straight

time rate of pay for wages and applicable fringe benefit contributions for the duration of the shift. If the shift should go in excess of ten (10) hours it will revert to double time.

(F) Shift work is defined as a workday starting outside of the normal starting times.

The provisions of this article shall apply to all of the New York Territory and the following counties in New Jersey: Monmouth, Mercer, Middlesex, Somerset, Hunterdon, Union, Essex, Hudson, Bergen, Passaic, Morris, Sussex, Warren.

Shift rate pay shall be applicable during the following hours:

(1) Shift time will be paid on the clock from 12:00 A.M. Monday until 11:59 P.M. on Friday and shall be paid at one and one-quarter (1 1/4) times the straight time rate of pay for wages and applicable fringe benefit contributions for the duration of the shift.

(2) After the normal shift (7 or 8 hours) is finished the wages and benefits will revert to the normal overtime schedule.

(G) All Tile Setters that float three hundred (300) square feet of mud walls and/or float and cover two hundred (200) square feet of mud floors in one (1) day are to receive four ($4.00) dollars per hour of extra pay. Tile Finishers shall work one (1) hour early in the morning on a mud job day to prepare. Overtime rates shall apply.

(H) Effective June 2, 2017, any new Tile Apprentice Finishers to the trade shall not make more than thirty-five (35%) percent of a Tile Setters wage, and thereafter, the yearly scale progression shall be adjusted accordingly. See: Article XIV of this CBA. .

(I) Any new Tile Tender to the trade shall not make more than forty (40%) percent of the Tile Finisher classification.

(J) A new employee who does not go through the Apprenticeship Program may be paid at the Tile Finishers rate during his first year of employment. The Union shall cooperate in providing information to the Employers regarding the date an employee was first employed or the number of hours an Apprentice has worked.

(K) Wages and fringe benefit contributions are based on where the work was performed. There are three (3) zones of pay:

Zone #1: Manhattan, Bronx, Queens, Staten Island and Brooklyn.

Zone #2: Northern New Jersey, Long Island, Westchester and Rockland.

Zone #3: Putnam, Ulster, Sullivan, Dutchess and Orange.

Without waiving the Union's right to solely allocate the wage increases as contained in §2(A) of this Article, the parties agree that, effective June 3, 2017, the cost for all residential and finish work on jobs awarded after June 2, 2017 shall be decreased by a total of five (5%) percent of the current entire wage/benefit package. This may be accomplished by any combination of benefit and/or wage reductions (such as, by way of example only, elimination of the Supplemental Fund

and/or reduction in annuity contributions), in the discretion of the Union in consultation with the Association, but not through a reduction in pension fund contributions. The five present (5%) discount shall not apply to jobs that have existing Target Fund commitments as of June 2, 2017.

### Section 3: Fringe Benefit Funds

(A) All Funds have been established, approved and operated jointly by the Union and the Association.

(B) These Funds are for the benefit of the Tile Setters and Tile Finishers and are to be used for the established purposes only.

(C) All fringe benefit fund contributions shall be paid on the basis of Tile Setter/Tile Finisher hours paid for, except that IPF, IMI, Tile Promotion and Local Pension shall be paid on the basis of hours worked.

(D) Elected full time officers of the Union and Employees of the Union may participate in the Funds and the International Union of Bricklayers and Allied Crafts Pension Fund (I.U. Pension Fund) provided contributions are paid to these Funds on their behalf in the same manner as other covered Employees.

(E) Employers shall provide for the coverage of Tile Setters/Tile Finishers in their employ with disability insurance in accordance with the requirements of the law of the State in which they are employed.

(F) Payments by Employers to all Funds shall be submitted via contribution receipts under the contribution receipt system (CRS) administered by the Fund Administrator on behalf of the Trustees of the respective Funds, containing such data as the Trustees may from time to time determine in their discretion to be necessary. Employers must file contribution receipts whether or not Employees are performing Tile Setters/Tile Finishers work during any particular period.

(G) The books and records of the Employer shall be made available at all reasonable times for inspection, copying and audit by, but not limited to, the accountant, outside independent auditors or other representatives of the Trustees of the Funds. The Employer shall be required to disclose upon such audits all books and records, including but not limited to all payrolls and payroll ledgers, including New York payrolls, New Jersey payrolls, Connecticut payrolls, computer payroll printouts, W-2 forms, Quarterly Federal payroll tax returns (Form 941), quarterly state payroll tax returns, annual Federal and State tax returns, cash disbursements, journals, purchase journals, New York State employment records, insurance company reports, Employer remittance reports, payroll and supporting checks, ledgers, vouchers, 1099 Forms, evidence of unemployment disability insurance premiums, certification of workers compensation coverage, checks in support hereof and any other documentation concerning payrolls. In addition, the aforementioned books and records of any affiliate, subsidiary, alter ego, joint venture or other related company of the Employer shall also be made available at all reasonable times for inspection, copying and audit by, but not limited to, the accountants, outside independent auditors or other representatives of the Trustees of the Funds. There will be a two-tiered audit program consisting of random audits and

targeted audits that will be operated pursuant to the Trustees' direction. Upon termination of operations, the Employer will be required to submit to a close-out payroll audit of its books and records to insure recovery of any fringe benefit contribution delinquencies found as a result of an audit examination.

(H) The Employer shall retain, for a minimum period of six (6) years, payroll and related records necessary for the conduct of a proper audit in order that a designated representative of the Trustees may make periodic review to confirm that contributions owed pursuant to this Agreement are paid in full. In the event, after the Trustees have made a request, the Employer fails to produce its books and records necessary for a proper audit, the Trustees of the Funds in their sole discretion, may determine that the Employer's monthly hours subject to contributions for each month of the requested audit period are the highest number of Tile Setter/Tile Finisher hours for any month during the twelve (12) preceding months audited, or during the last twelve (12) months for which reports were filed, whichever monthly number of hours is greater. Such determination by the Trustees shall constitute presumptive evidence of delinquency. Prior to making such determination, the Trustees shall mail a final seven (7) day written notice to the Employer advising him that such determination shall be made if the Employer does not schedule a prompt audit. Nothing herein shall mean that the Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records for audit.

(I) If the Employer seeks the protection and/or intervention of the Bankruptcy Court, nothing herein shall mean that the Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records nor shall this section limit the Trustees rights as creditors under the United States Bankruptcy Code.

(J) When auditors are sent to audit the books and records of the Employer and a definite appointment is scheduled and the auditor cannot start at the appointed time and date and must return, or when complete payroll records requested herein are not furnished, then the Employer shall be penalized and pay the sum of two hundred fifty ($250.00) dollars per auditor, to cover the expense of the auditor.

(K) It shall be a violation of this Agreement for any Employer to fail to furnish proper payroll records when requested for the purpose of completing an audit. The Union shall have the right to remove all its members from the offending Employer provided that three (3) days' notice of intention to remove Tile Setters or Tile Finishers from a job is given to the Employer by the Union by certified mail, return receipt requested. If such members who are removed remain on the jobsite during regular working hours, they shall be paid for lost time.

(L) Contributions from Association members are due by the 15th of the month following the month in which the work is performed. Contributions from the Independent Employers are due biweekly commencing on the 1st and 15th of each month. Interest on the delinquent amount will accrue from the respective due dates. Interest will accrue at the prime rate or such amount of interest as the U.S. Department of Labor or the Internal Revenue Service may require Trustees of Employee Benefit Funds to collect for late payments of contributions, or at the rate of ten (10%) percent per annum (calculated from the due date) for local funds and fifteen (15%) percent per annum for international funds (calculated from the day after the due date), whichever amount is

greater. If contributions are not received in the Fund Office by the respective due dates, the Union will send the Employer a letter stating that the Employer must pay within three (3) days. The Union is committed to the Funds to pull the men off of the job for any Employer that does not remit the required contributions after the three (3) day notice is executed. If the Fund Office does not receive the contribution within the ten (10) days allotted, the matter will be turned over to Fund Counsel. Fund Counsel will send a letter stating that if the Fund Office does not receive payment within seven (7) days, a lawsuit will commence and the Employer shall be liable for the payment of delinquent contributions with interest, plus liquidated damages of twenty (20%) percent of the amount of delinquent contributions owing, and such other costs and penalties as may be assessed by a court as provided under ERISA, including but not limited to reasonable audit costs, attorneys' fees and court costs. The Funds' receipt or acceptance of late payment of contributions whether or not such payment is in response to a notice from the Union, the Fund Office or Counsel shall not constitute a waiver of interest by the Funds, and the Union and the Funds reserve the right to seek interest on the late payment of contributions received in accordance with protocols adopted by the Fund Trustees, even in the absence of a lawsuit. Interest will accrue at the rate of three (3%) percent plus prime, not to exceed ten (10%) percent per annum.

(M) If the audit amount for any year is at least three (3%) percent of the Employer's annual gross payroll for covered employees for that year, the Employer shall pay the cost of the audit. Where the audit covers more than one year, then the three (3%) percent shall be calculated on the total gross payroll for covered employees for the period of the audit.

(N) Where payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the Trustees of the Funds to have the court enter an Order permanently enjoining the Employer and its agents, representatives, directors, officers, stockholders, successors and assigns, for the remaining term of this Agreement from failing, refusing or neglecting to submit the required Employer remittance reports and/or to pay the required contributions to the Funds, and requiring the Employer to cooperate in an audit in accordance with this Agreement.

(O) The Employer recognizes that when payment of contributions to the Funds pursuant to this Agreement is made by check or other negotiable instrument that is returned uncollected, the Funds incur additional cost and expense. The Employer hereby agrees that in the event any payment to the Funds by check or other negotiable instrument results in the check or negotiable instrument being returned without payment after being duly presented, the Employer shall be liable for additional damages in the amount of one hundred ($100.00) dollars to cover such additional costs, charges and expenses. Nothing herein is intended, nor shall it be interpreted, to mean that the Funds or the Union waive any other liquidated damages required to be paid pursuant to this Agreement in the event Employer contributions to the Funds are not timely paid in full.

(P) If Tile Setters/Tile Finishers are withdrawn from any job in order to collect contributions to the Funds and the I.U. Pension Funds, the Tile Setters/Tile Finishers who are affected by such stoppage of work shall be paid for lost time, provided that three (3) days' notice of the intention to remove Tile Setters/Tile Finishers from a job is given to the Employer by the Union by certified mail, return receipt requested.

(Q) The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trusts of the Funds, as though it had actually signed the individual documents and further agrees to be bound by all actions taken by the Funds pursuant to said Agreements and Declaration of Trusts, as amended, and their respective Plans, as amended, and by all By-Laws, rules and resolutions adopted to regulate each of the Funds.

### Section 4: Dues check off

The Employer shall deduct from wages in the amount certified by the Union the gross salary for each hour paid or any additional sums per hour thereafter specified by the Union. The amount so deducted shall be remitted to the Union as dues check-off. A statement, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid, shall accompany the sums transmitted. The Employer and the Union further acknowledge that the Employer has agreed to make such deductions provided that at the time of such deductions, the Employers have received written authorizations executed by the Employee. The Employer and the Union further acknowledge that the Union has agreed to indemnify and hold harmless the Trustees from any and all claims, actions and proceedings arising out of said payment.

### Section 5: International Union of Bricklayers and Allied Crafts Pension Fund

(A) The Employer acknowledges that the Union has elected to participate in the I.U. Pension Fund.

(B) The Employer hereby agrees to be bound by and to the Agreements and Declarations of Trusts for the I.U. Pension Fund as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of Fund pursuant to said Agreements and Declarations of Trusts.

(C) The Employer hereby irrevocably designates as its representatives on the I.U. Pension Fund Board of Trustees, such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

(D) For the purpose of this section, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to the I.U. Pension Fund.

(E) Contributions shall be paid on behalf of all covered employees starting with the employee's first (1st) day of employment in a job classification covered by this Agreement. This includes, but is not limited to journeymen, apprentices, finishers, trainees and probationary Employees. There shall be no contributions for pre-Apprentices for a period of three (3) months from the first day of the Apprentice Program while attending the twelve (12) week pre-job training program.

(F) All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have an independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the I.U. Pension Fund. Any Employer found, as a result of an audit

ordered by the Trustees of one (1) of the I.U. Pension Funds, to have been substantially inaccurate in reporting shall be charged the full costs of such audit.

(G) If the Employer fails to make any contribution specified in this section, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due, including: (A) the unpaid contributions, (B) interest on the unpaid contributions at fifteen (15%) percent per annum, (C) liquidated damages in the amount of twenty (20%) percent of the contribution delinquency, (D) reasonable attorneys' fees, and such other costs and penalties as may be assessed by a court as provided under ERISA. The Employer's liability for payment under this Article shall not, at the Union's sole option, be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.

### Section 6:  New York City Paid Sick and Safe Leave Law is Waived

On behalf of itself and its members, the Union waives any and all rights under the New York City Paid Sick and Safe Leave Law, NYC Admin. Code §20-911 et seq, *as amended*.

### Section 7:  Patient Protection and Affordable Care Act

It is the intention of the parties that the health and welfare benefits provided by the Funds to which the Employers must contribute under this Agreement, shall satisfy the requirements under the Patient Protection and Affordable Care Act ("PPACA") whereby the Employers offer to full-time employees and their dependents the opportunity to enroll in minimum essential coverage under an eligible Employer sponsored Plan. The parties shall instruct the Plan Trustees accordingly. In the event that during the term of this Agreement it shall appear to either or both of the parties that any health care option or coverage provided by the Local 7 Tile Industry Welfare Plan is or may become insufficient or deficient, or out of compliance pursuant to any federal, state or local health care legislation, or any other regulation in effect requiring a modification of the options or coverage in order to avoid Employer penalties under the PPACA or otherwise, the parties shall immediately reopen this contract for the purpose of negotiating the least costly modifications to the Plan, which would enable the Plan to be compliant and Employers not be subject to penalties, at no additional total compensation package cost to the Employers, or the least such cost possible.

### ARTICLE X
### Residential and Other Reduced Rate Work

Section 1.

(A) The parties have agreed to establish a secondary wage rate in an effort to recapture market share. This is a new program that will require the Association and the Independent Employer to sign the standard CBA, as well as a separate agreement. The program will be strictly monitored. Violations of the new program could result, after a Joint Trade Board hearing, in reimbursement of wages and fringe benefit contributions, as well as being levied a fine. Residential and other

21

reduced rate work shall be governed by the attached B-Classification Agreement and wage schedules.

(B) A day's work will be governed by Article IX, Section 1.

Section 2.

(A) Overtime and shift work rates shall be governed by the respective Articles and Sections of this Agreement.

(B) Hiring conditions: At this time, there is no referral hall. The parties agree that they shall discuss the mechanics of the workings of a referral hall for "B Rate" workers once there is a sufficient supply of manpower for the Union to have a pool of employees to choose from.

(C) Payment of fringe benefit contribution shall be governed by the attached wage schedules.

## ARTICLE XI
### Holidays

Section 1.

| | |
|---|---|
| NEW YEAR'S DAY | CHRISTMAS DAY |
| PRESIDENT'S DAY | MEMORIAL DAY |
| INDEPENDENCE DAY | LABOR DAY |
| VETERAN'S DAY | THANKSGIVING DAY |
| COLUMBUS DAY | DAY AFTER THANKSGIVING |
| GOOD FRIDAY | MARTIN LUTHER KING, JR. DAY |

If a Holiday should fall on a Sunday, it will be observed on Monday. If holiday should fall on a Saturday, it will be observed only on Saturday.

Section 2.

No work within the trade and geographic jurisdiction of the Union shall be performed on Labor Day.

Section 3.

Neither the Union nor the Employer shall close down a jobsite or declare the day before or after one (1) of the Holidays listed in Article XI as an additional holiday or day off without the prior consent of a majority (51%) of all the Tile Setters and the Tile Finishers working on the site on the last working day prior to the additional day or days off.

When Tile Setters and Tile Finishers are working in locations outside of the jurisdiction of the Union, they must observe holidays in the locality they are working.

## ARTICLE XII
## Foremen

Section 1.

There shall be a Foreman on all jobs within the jurisdiction of the Union. The Foreman shall be a journeyman Tile Setter.

(A) On jobs where five (5) or more Journeyman Tile Setters are employed, the Foreman shall receive an amount at least twenty ($20.00) dollars per day above the daily wage of a Journeyman Tile Setter regardless of the length of the day.

(B) The Forepersons Finisher shall receive ten ($10.00) dollars a day for coordinating the job.

(C) On jobs where more than ten (10) Journeyman Tile Setters are employed, the Foreman shall not handle the tools and shall receive an amount of at least twenty ($20.00) dollars per day above the daily wage of a Journeyman Tile Setter.

(D) Any journeyman Tile Setter who has invested in, retained stocks or has any financial interest in any tile contracting firm under no circumstances shall be installed as foreman on any operation or installation of tile work.

## ARTICLE XIII
## Shop Stewards

Section 1.

(A) A Shop Steward shall be present on all jobs having two (2) or more Tile Setters/Tile Finishers. The Shop Steward shall be appointed by the Union and shall not be discriminated against for the legitimate performance of his duties.

(B) For independent employers, the second man on a job shall be a steward.

Section 2.

The duties of the Shop Steward at the jobsite shall be as follows:

(A) To inspect dues books and receipts for initiation fees and to report to the Local Union if a payment has not been made as required;

(B) To report violations of the working rules or the CBA, unsafe conditions and other jobsite disputes, to the Foreperson or the Employer, and to report to the Field Representative if the condition or violation is not promptly corrected, or if the dispute is not promptly resolved;

(C) To assist any injured member in receiving proper and immediate care;

(D) To report to the President any work assignments falling within the recognized trade jurisdiction of this Local made to employees represented by another labor organization.

(E) The Shop Steward shall notify the Foreman when lockers are supplied and whether they provide adequate protection for the Tile Setters/Tile Finishers clothing and tools.

(F) The Shop Steward shall enforce the conditions of this Agreement and methods of employment herein established. It is their duty to see that no work is performed during the normal lunch period and that no Tile Setter/Tile Finisher continues to work after the end of the normal shift, except as provided by this Agreement.

(G) If the Shop Steward is unable to promptly resolve a problem at the job, the Shop Steward shall contact the Local Union office as soon as possible. The Shop Steward shall not have the authority to order a work stoppage or interruption in the work progress.

(H) The Shop Steward shall perform their duties with the least possible inconvenience to the Employer. The Shop Steward's duty is to work as a Tile Setter/Finisher and shall not use their position as an excuse to avoid the performance of their duties as a Tile Setter/Tile Finisher. The Shop Steward's duty is to look after the interest of the Employer as well as the union. The Shop Steward shall not be laid off without reasonable cause and without prior notification to the Business Manager or their representative.

(I) All Shop Steward reports must be done during non-working hours.

## ARTICLE XIV
### Apprentices

There shall be a Joint Apprenticeship and Training Committee consisting of three (3) members designated by The Greater New York and New Jersey Tile Contractors Association, Inc., (1) member of the Building Contractors Association of Atlantic County, and three (3) members designated by the Union to administer the Apprenticeship Training Program which shall meet at least semi-annually.

An Apprentice shall be defined as a "Local 7 Apprentice" in the Apprenticeship Training Program. The Apprenticeship Training Program shall be a four (4) year program for all Local 7 Tile Setters. The program for the Tile Finisher Apprentices shall be a three (3) year program. The Apprenticeship Training Program shall provide for mandatory cross-training and upgrading for all Local 7 Apprentices.

If, at the Union's discretion, the pre-Apprentice who is going through the twelve (12) week training program is not qualified to become an Apprentice at the time, that pre-Apprentice shall be subject to mandatory testing prior to a final decision. On the Apprentice's two (2) year anniversary in the Apprenticeship Program, the Committee, at its discretion, will decide if the Apprentice shall continue on a Tile Setter or a Tile Finisher apprenticeship track.

Effective June 2, 2017, the wage rates of Apprentices under the four (4) year program of this Agreement will be based on the Tile Setters rate:

| **Hours of Experience** | **Wage Rate** |
|---|---|
| 1 -  750 Hours of Work | 35% of Tile Setters Rate |
| 751 - 1,500 Hours of Work | 40% of Tile Setters Rate |
| 1,501 - 2,250 Hours of Work | 50% of Tile Setters Rate |
| 2,251 - 3,000 Hours of Work | 55% of Tile Setters Rate |
| 3,001 - 3,750 Hours of Work | 60% of Tile Setters Rate |
| 3,751 - 4,500 Hours of Work | 65% of Tile Setters Rate |
| 4,501 - 5,250 Hours of Work | 70% of Tile Setters Rate |
| 5,251 - 6,000 Hours of Work | 75% of Tile Setters Rate |
| 6,001 - 6,500 Hours of Work | 80% of Tile Setters Rate |
| 6,501 - 7,000 Hours of Work | 90% of Tile Setters Rate |
| 7,001 - 7,500 Hours of Work | 100% of Tile Setters Rate |

Allocation of the wages and fringe benefits will be at the discretion of the Union, provided, however, that Employers are not required to make contributions to any benefit funds on behalf of Apprentices for their first three (3) months (375 hours) of employment.

The total package (wages and fringes) shall not exceed the Apprentice's percentage category.

The Employer agrees to be bound by all governmental regulations as well as Project Labor Agreement requirements concerning the Apprentice to Journeyperson ratio on all covered work.

The parties are subject to and bound by the "Standards of Apprenticeship for Greater New York and New Jersey Tile Setters/Tile Finishers Joint Apprenticeship Committee," which shall apply to all Apprentices employed under this Agreement. The "Standards of Apprenticeship for Greater New York and New Jersey Tile Setters/Tile Finishers Joint Apprenticeship Committee" are incorporated in this Agreement by reference as if fully set forth herein.

In no event, shall Apprentices be utilized as Finishers.

## ARTICLE XV
## Notice of Execution of Contract

<u>Section 1.</u>

(A) The Employer must, within a reasonable time of entering into a contract requiring the performance of labor covered by this Agreement, give written or verbal notice of such contract to the Union. When a contractor fails to give notice contemplated herein, it must provide written notice of all future contracts.

(B) The Employer shall provide to the Secretary of the Union either verbally or in writing:

1. The name of the party with whom the contract was made.

2. The place where the contract is to be performed.

3. The approximate time when the Employer will commence performance of work under such contract.

4. Whether this is to be a mortar job and the appropriate number of working days by the Tile Setters/Tile Finishers required performing the job.

5. The Secretary of the Union shall promptly acknowledge to the Employer the receipt of such communication.

(C) No Tile Setters/Tile Finishers shall perform any work for any Employer who fails to give all notices as provided for in this Article, prior to the commencement of any work.


## ARTICLE XVI
## Assignment of Contract/Subcontracting

No Employer, having a contract requiring the performance in connection therewith of labor within the classification set forth in this Agreement, shall subcontract, sell, sublet and/or assign to any other person, firm, corporate or entity who is not signatory to or bound by this Agreement, the performance of such contracts including the Portland cement float coat or any other portion of the contract so far as the labor is required to be performed thereunder. The Employer shall not be responsible for payment of fringe benefits of a signatory subcontractor.

## ARTICLE XVII
## Contract or Piece Work

No Employer and Tile Setter/Tile Finisher shall bargain or contract with each other to pay employees on a piecework basis, *e.g.*, based on a unit cost. This bargaining or contracting shall be looked upon as piece work, which is not countenanced by the parties bound by this Agreement. Nothing in this paragraph shall be construed to prevent an Employer from setting, requiring or

expecting reasonable productivity standards from its employees and holding employees to such standards.

## ARTICLE XVIII
## Strikes and Lockouts

The Union or any member of the Union shall not engage in or authorize any strike, walkout, or slowdown, picketing, stoppage of work or boycott, or concerted refusal to work, or any other interruption of work against the Employer. Furthermore, it is understood that no Union Officer, representative or Agent may authorize, encourage or assist in any strike or concerted work stoppage in the shop or any premises of the Employer or at the jobsite, nor will the Union or its officers participate in, counsel or induce any concerted interruption of work. This clause also specifically prohibits any Union member from refusing to work due to the existence of a picket line, unless sanctioned by the Building Trades Council. No Employer shall lockout any members of the Union working under the jurisdiction of this Agreement prior to filing a complaint, dispute or grievance, or pending the resolution thereof as provided in Article XIX hereof.

Section 1.

Except for a breach of this Agreement by the Employer, or as herein otherwise provided the Union shall not order any strike, slowdown, picketing stoppage of work or boycott, against the Employer, no members of the Union shall leave the work of the Employer and no Employer shall lock out any members of the Union working under the jurisdiction of this Agreement, prior to filing a complaint, dispute or grievance, or pending the resolution thereof, as provided in Article XIX hereof.

Section 2.

The Union may call or sanction a strike for: (A) the Employer's refusal to submit a matter to the Joint Trade Board as defined in Article XIX herein, pursuant to the arbitration Article of this Agreement, (B) the Employer's failure to comply with any decision of the Joint Trade Board established hereunder within five (5) working days after such decision, (C) the Employer's failure to resolve a claim, dispute or demand arising out of the Employer's fringe benefit contribution and audit obligations set forth in Article IX of the Agreement, (D) the Employer's failure to post and maintain a Payment Bond as provided by Article XXIII of this Agreement, and (E) any other reason provided for in this Agreement.

Section 3.

When the Union, upon investigation, finds that the Tile Setters/Tile Finishers on any job are being paid less than the rate of wages prescribed in this Agreement, they shall, provided that three (3) days' notice of the intention to remove the Tile Setters/Tile Finishers from a job is given to the Employer by the Union by certified mail, return receipt requested, be entitled to withdraw the Tile Setters/Tile Finishers from such job without first submitting the complaint to the Joint Trade Board. Thereafter, the Union shall resolve the complaint as provided for in Article XIX of this Agreement. No damages of any kind or nature shall be awarded or allowed against the Union or

any officer or member thereof by reason of the withdrawal of members of the Union from a job for which a complaint has been filed as aforesaid provided the complaint is filed in good faith and has a reasonable basis in fact.

## ARTICLE XIX
## GRIEVANCE and ARBITRATION PROCEDURE

### Section 1: Grievance and Arbitration Procedure

Disputes, complaints and charges arising out of or in connection with the interpretation and/or application of this Agreement shall be resolved in the following manner:

Step I: Any dispute, complaint or charge arising out of or in connection with the interpretation and/or application of this Agreement must be in writing and served on the Union and/or Employer representatives on a form approved by the parties by certified mail, return receipt requested, within thirty (30) days after the dispute arose. Such thirty (30) day limitation of time may be waived by the Joint Trade Board in its sole discretion.

Step II: Within ten (10) business days after receiving notice of the dispute, the representatives of the Union and the Employer shall meet in an effort to resolve the dispute. The party that has filed the grievance has the burden of contacting the opposing party for the purpose of setting up such meeting.

Step III: (a) In the event that the parties cannot reach a satisfactory result of the grievance after the Step II meeting, then the Charging Party shall have the option to send, within a reasonable time, a signed, written, demand, charge, or complaint on a form approved by the parties to the Secretary/Treasurer of the Union covering the craft in which the dispute arose. A copy of said demand must also be sent to the Union, or Employer, whichever party did not file the grievance, and if applicable, the individual member. All demands, charges, and complaints, and copies thereof, must be delivered by the Secretary/Treasurer of the Union personally or sent by certified mail, return receipt requested upon the party against whom the grievance is filed.

(b) Unless and for good cause shown, a hearing on such demand, complaint, or charge, shall be held no earlier than one (1) calendar week after receipt of such written dispute, charge or complaint. The Joint Trade Board shall proceed to hear and determine all properly noticed and served disputes, charges, complaints, seeking an interpretation and/or application of the terms of the CBA.

### Section 2: The Joint Trade Board

(A) There shall be a Joint Trade Board consisting of two (2) members of the Union and two (2) members of the Association. A quorum shall consist of three (3) members. Each party to the Joint Trade Board, Union, and Association shall have a single unit vote.

(B) There shall be one (1) Chairman and one (1) Secretary serving on the Joint Trade Board at all times. One (1) individual from the Union may serve as Secretary or Chairman. One (1)

individual from the Association may serve as Secretary or Chairman. In no event may the Secretary and Chairman positions be filled with two (2) individuals from the Union or two (2) individuals from the Association. In no event may one (1) individual serve as both Secretary and Chairman. In 2013, the Chairman position shall be filled by a Union member and the Secretary position will be filled with an Association member. In 2014, and from year to year thereafter, the position of Chairman and Secretary will alternate between a Union representative and an Employer representative.

(C) The Joint Trade Board is empowered to hear and determine any and all disputes, complaints and charges which seek to interpret or apply the provisions of the CBA over which it has jurisdiction brought before it pursuant to the procedures set forth in Section 1 above. The Joint Trade Board is empowered to hear testimony and review records and other evidence necessary to make a determination regarding the underlying dispute, charge, or complaint. The Joint Trade Board is empowered to waive the thirty (30) day limitation of time in which to commence a grievance in its sole discretion.

(D) The Joint Trade Board shall only have the authority and jurisdiction to interpret or apply the terms and conditions of this Agreement and impose an appropriate penalty or remedy and shall be prohibited from adding to, subtracting from, or otherwise modifying or changing any term or condition thereof.

(E) Should an accused party fail to appear before the Joint Trade Board, after being summoned by certified mail, return receipt requested or by facsimile without an excuse satisfactory to the Joint Trade Board, the charge, complaint, or demand will be considered as sustained.

(F) The unanimous unit decision of the Joint Trade Board shall be final and binding on all parties and may only be subject to enforcement or review in a court of competent jurisdiction pursuant to the applicable laws of the United States or the laws of the particular state in which the grievance arose.

(G) In the event that a charge against an Employer is brought before and sustained by the Joint Trade Board, the penalty imposed shall be determined solely by a unanimous unit vote of the Joint Trade Board.

(H) Any member of the Association or Union against whom a charge has been sustained for violating any of the Articles of this Agreement, and who fails to comply with a decision of the Joint Trade Board, shall immediately be deprived of all privileges and benefits of this Agreement. Article XXX with respect to the notice provisions shall apply.

(I) In the event that the Joint Trade Board fails to reach a decision or is deadlocked, that is, there is a split in the unit vote, then the matter shall be submitted within twenty (20) days of the deadlock, in writing, by either party to the American Arbitration Association at its offices in the City of New York for a hearing and decision pursuant to its Labor Arbitration Rules. The award of the Impartial Arbitrator shall be final and binding on all parties. Costs of arbitration shall be borne equally by the parties. Such award shall be confirmed in a court of competent jurisdiction.

(J) An Arbitrator selected to hear and determine any dispute arising under this Agreement shall have authority and jurisdiction only to interpret or apply the terms and conditions of this Agreement and shall be prohibited from adding to, subtracting from, or otherwise modifying or changing any term or condition hereof.

(K) This Article shall not be construed to limit or affect the right of the Benefit Funds to pursue recovery of delinquent contributions in federal court.

<u>Section 3:</u>

(A) The Union reserves the right to submit to arbitration any dispute regarding fringe benefit contributions and payroll audit obligations. However, neither this right, nor resort to arbitration over any such dispute, shall be deemed a waiver of the Union's right to resort to any other remedy provided by law, including the right to strike, or the right of the Union or the Funds to seek available remedies in Court. Resort to one (1) remedy at one (1) time shall not be deemed a waiver of the right to resort to others at a future or subsequent time. In the event an arbitration award favorable to the Union or fringe benefit Funds is rendered regarding delinquent fringe benefit contributions or payroll audit obligations, such decision and award shall contain a directive that the Employer pay damages, including but not limited to interest, back pay, injunctive relief, reasonable fees and penalties, arbitration fees per day for arbitration costs and expenses, plus reasonable attorney's fees. In any proceeding to confirm an award of the Joint Trade Board, service may be made by registered or certified mail, return receipt requested within or without the State of New York, as the case may be.

<u>Section 4:</u>

Any Union member or member of any of the Association, who presides on the Joint Trade Board and is directly involved in any case brought before the Joint Trade Board, shall withdraw from the Joint Trade Board until the case is settled and an alternate shall fill the temporary vacancy.

# ARTICLE XX
## Clothing and Tools

<u>Section 1.</u>

The Employer shall be responsible for supplying Tile Setters and Tile Finishers with hard hats, safety goggles, ear protection which shall be considered part of their tools. The Employer shall be responsible for supplying Tile Setters only with Makita saws. Thereafter, the Tile Setters/Tile Finishers shall be responsible for their own gear.

<u>Section 2.</u>

Tile Setters will be given their first (1st) Makita saw. Replacement saws will be supplied by the employee. The Employer will supply replacement blades.

The Employer shall reimburse Tile Setters/Tile Finishers and Apprentices for the loss of tools or both, at the site of any operation where the Tile Setters/Tile Finishers or Apprentices are not able to collect the value of same from the Owner or Contractor or due to fire or the forcible entry to the locker area and/or tool house. The Employer shall attempt to have a locker space made available on all job sites on every three (3) floors.

Section 4.

All disputes regarding loss of clothing and/or tools by a Tile Setter/Tile Finisher or Apprentice, where the Tile Setter/Tile Finisher or Apprentice is not reimbursed by the Employer, shall be taken up by and considered by the Joint Trade Board.

## ARTICLE XXI
## International Masonry Institute

(A) The Masonry Industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper. The parties to this Agreement believe that the International Masonry Institute ("IMI") is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in these program areas in an effective manner and coordinating them through a single regional/international system.

(B) As contributions from this geographical area increase, IMI will be able to devote a portion of those monies to advertising and promotion, research and development, apprenticeship and training and labor/management relations programs directed specifically to this area.

## ARTICLE XXII
## BAC PAC and Local PAC Check-off

The Employer agrees to deduct an amount from the pay of each Employee who is a Union member and who executes a voluntary check-off authorization form for the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC) and/or the Local PAC. Deductions shall be in the amount and at the intervals specified on the check-off form. The Employer agrees to transmit BACPAC deductions to the Treasurer of BACPAC in care of the Union and to transmit Local PAC deductions to the Treasurer of Local PAC in care of the Union. The deduction shall continue for the life of this Agreement for those Employees who sign BACPAC and Local PAC forms unless they are revoked individually and in writing.

The Union shall submit to the Employer a fully executed BACPAC and Local PAC authorization form signed by Employee. Said authorization shall be accurately prepared showing the Employee's full name and social security number. The remittance to the Union shall be accompanied by a statement showing the name of each Employee and the number of hours each Employee has been paid. The Union shall defend, indemnify and save the Employer harmless

against any and all claims, demands, suits, disputes, grievances, or other forms of liability (including attorney's fees incurred by the Employer) that shall arise out of or by reason of the operation of this check-off clause or by reason of actions taken by the Employer pursuant to this clause.

## ARTICLE XXIII
## Payment Bonds

### Section 1.

All Employers shall post and maintain a payment bond, letter of credit or cash equivalent in the amount of twenty-five thousand ($25,000.00) dollars to insure payment of contributions to the fringe benefit Funds. The payment bond shall be provided upon execution of the Agreement. A payment bond shall be maintained for a reasonable period after termination of this Agreement to insure recovery of any delinquencies found by a close-out audit of the Employer. Alternatively, Association Employers may deposit funds equivalent to twenty-five thousand ($25,000.00) dollars in an account or certificate of deposit held in escrow by the escrow agent on behalf of the Union for the benefit of the Funds, with any interest payable to the Employer. Non-association members who do not post a bond and choose to post a cash equivalent shall deposit such cash in an escrow account to be maintained by the Funds.

### Section 2.

All new Employers and Out-of-Town Employers without payment bonds must pay and maintain a security deposit of two (2) weeks in fringe benefit contributions for each worker on the job in advance via certified check and/or money order until such time as a new payment bond is obtained.

### Section 3.

The Union will be responsible to monitor the payment bond requirements and present quarterly reports as to who has been signed as an independent contractor and that payment bonds naming the fringe benefit Funds are in place. The Trustees of the Funds will establish the terms of the payment bond, letter of credit or cash equivalent in accordance with the Payment Bond Protocols and Escrow Agreements approved by the Trustees of the Funds now in effect. The Association members will not be required to post more than twenty-five thousand ($25,000.00) dollars in payment bonds. Once it has been determined that an Employer cannot secure the requisite bond within a reasonable period of time, the Employer must pay weekly fringe benefit funds at the same time wages are paid until such time as they become bondable to a limit of twenty-five thousand ($25,000.00) dollars.

## ARTICLE XXIV
## Work and Safety Methods

The Union shall be responsible to make sure that all Tile employees have been OSHA trained and certified, and that they maintain that status current before they are assigned to work.

Safety and sanitary regulations as adopted by OSHA shall be rigidly adhered to by both parties to this Agreement.

## ARTICLE XXV
## Promotion Fund

Each Employer shall pay ten ($0.10) cents for each straight time hour of work to each of the Associations to promote the Tile Industry, to encourage and increase the use of tile by Architects, owners, general contractors, and the building industry in general and to foster the common interest and welfare of Employers and Employees engaged in the Tile Industry. The Industry Fund shall be administered by a Board of Trustees designated by the Greater New York and New Jersey Tile Contractors Association, Inc. The Board of Trustees shall have the authority to adopt such rules and regulations as may be necessary to the proper supervision and administration of the said Fund. Such rules and regulations shall be binding on each Employer. Local 7 shall have the privilege of appointing a representative to attend meetings of the Board of Trustees at the invitation of the Board.

## ARTICLE XXVI
## Taft Hartley Benefit Funds

(1) The Employer shall pay timely and proper contributions based on hours as per the current wage and benefit schedules, and also provide contribution receipts or records in accordance with this Agreement to all current benefit funds as well as their successors and assigns.

(2) Payment of all fringe benefit contributions from any signatory Employer shall be tendered through the purchase of contribution receipts via electronic means under the Contribution Receipt System ("CRS") to the Tile Setters and Tile Finishers Fringe Benefit Funds.

(3) Contribution receipts are due no later than the 15th of each month for Employers who are members of the Association (ex. May benefits will be paid no later than June 15th). In the pay period that immediately follows the 15th, the Employer will print out a voucher and enclose it with the employee's paycheck. Contribution receipts are due bi-weekly commencing on the 1st and 15th of each month for Independent Employers. These payments will include all benefits that are owed for the prior pay periods. The Employer will print out a voucher and enclose it with the employee's paycheck on the pay period that follows the 1st and 15th of the month. All Employers will be assigned a password for the CRS in order to remit payment of contribution receipts. In the event of a layoff, the Employer may mail the required voucher to the employee at the required payment date.

(4) The purchase of contribution receipts shall be administered by the Fund's Third-Party Administrator, which at the time of the printing of this contract is Daniel H. Cook Associates, Inc. located at 253 West 35th Street, 12th Floor, New York, New York 10001.

(5) In the event the Employer fails to purchase contribution receipts in the manner provided for herein, it will be charged the cost to the Funds of having the Administrator's office perform such task for the first (1st) offense; thereafter, a charge of twice the amount of the first (1st) offense

shall be imposed for the second (2nd) offense; and a charge of three times the amount of the first (1st) offense shall be imposed for the third (3rd) offense accordingly. There shall be a minimum charge of two hundred fifty ($250.00) dollars for the first offense, three hundred fifty ($350.00) dollars for the second offense, and five hundred ($500.00) dollars for each offense thereafter.

(6) The defaulting Employer has the right to object to the imposition of said charge by notification to the Joint Trade Board within ten (10) days from the date the fine was imposed upon it.

(7) Failure of signatory Employers to comply with these terms shall constitute a breach of this Agreement by the defaulting Employer, and the Union, on notice, reserves the right to forthwith withdraw its members from jobs of the Employer, or take such other action as it deems necessary, any terms of this Agreement to the contrary notwithstanding.

(8) Payments to each Vacation benefit within Local 7's Welfare Fund shall be deducted from each covered employee's wages after all taxes have been deducted by the Employer and shall be forwarded to the Vacation Fund as hereinafter provided. Vacation payments under this Article, or any other deduction from an employees pay, shall be considered the same as wage payments under the agreement. Vacation Fund contributions shall be accrued to each covered employee account.

## ARTICLE XXVII
## Employer Principals

No proprietor or partner of a firm, partnership or corporation who is the Employer herein, nor any person who is a stockholder, officer or director of a corporation or is in any way directly or indirectly (such as through a spouse or family member) financially interested in the Employer's business enterprise, or exercises either directly or indirectly any degree of ownership, management or control over the Employers, shall be permitted to work as a Tile Setter/Tile Finisher on any job involving more than ten (10) team days.

## ARTICLE XXVIII
## Validity

Section 1.

The Employers and the Union hereto shall be held by and subject to all provisions of this Agreement while it continues in force. It is further agreed by and between the parties hereto that if any Federal or State Court shall at any time decide that any clause or clauses of this Agreement is or are void or illegal, such decisions shall not invalidate the other portions of this Agreement, but such clause or clauses shall be stricken out and the remaining portion of this Agreement shall be considered binding between the parties hereto. Nothing contained in this Agreement shall be construed to prevent any one (1) or more individual Tile Setters/Tile Finishers from pursuing whatever civil or criminal remedies that they may have under the law for the collection of their wages, or any part thereof.

<u>Section 2.</u>

Any provisions of this Agreement hereinabove mentioned which provide for Union security or employment in a manner or to an extent prohibited by any law or the determination of any Governmental Board or Agency shall be and hereby are of no force or effect during the term of any such prohibition. It is understood and agreed, however, that if any of the provisions of this Agreement which are hereby declared to be of no force or effect because of restrictions imposed by law is or are determined either by Act of Congress or other legislative enactment or by a decision of the Court of highest recourse to be legal or permissible, then any such provision of this Agreement shall immediately become and remain effective during the remainder of the term of this Agreement. The Union reserves the right to re-negotiate any of the provisions of this Agreement which may be of no force or effect.

<u>Section 3.</u>

Any laws and rules of the International Union or the mandates of the Executive Board or any rules or regulations of the Tile Contractors Association of America which may be in conflict with the provisions contained in this CBA shall be subordinated to this Agreement and the terms and conditions of this Agreement shall govern.

## ARTICLE XXIX
## <u>Most Favorable Employer</u>

The Union agrees that in the event it enters into any contract with an Employer within the territorial jurisdiction of this Agreement, which shall provide more favorable terms to such Employer, including rates of pay or conditions of employment than are provided in this Agreement, it will and hereby does authorize the Association to adopt such more favorable terms at its option. Upon exercise of such option by the Association upon at least ten (10) days written notice thereof to the Union, such more favorable terms and conditions will immediately and automatically become a part of this Agreement.

## ARTICLE XXX
## <u>Terms of Agreement</u>

(1) This Agreement shall be effective for the period from June 3, 2021 to June 2, 2025 between Local 7 and the Greater New York and New Jersey Tile Contractor's Association, Inc. Notice by either side of its desire to terminate or modify this Agreement shall be given in writing, by certified mail, return receipt requested, by the party contemplating such change or changes at least ninety (90) days prior to the expiration of this Agreement, and unless such notice is received within the time herein specified, this Agreement shall continue from year to year thereafter until either party gives notice, in writing, by certified mail, return receipt requested, by the party contemplating such change or changes at least ninety (90) days prior to the annual renewal date.

(2) All notices, requests, demands and other communications which are required to be or may be given under this Agreement (other than notices required in subparagraph 1 above) shall be in writing and shall be deemed to have been duly given when delivered in person or after dispatch to

certified mail, postage prepaid, return receipt requested, to the party to whom the same is so given or made, at the address of the current President of the Association, or at such other address as any party may specify by notice to all parties given as aforesaid.

(3) There are no representations, agreements, arrangements or understandings, oral or written, between the parties relating to the subject matter of this Agreement which are not fully expressed in this Agreement.

(4) This Agreement shall be binding upon and shall inure to the benefit to each party hereto, and any successor thereto resulting from a merger, consolidation or other reorganization or restructuring.

(5) The person signing on behalf of the Employer hereby acknowledges by their signature receipt of copies of the Agreements and Declarations of Trust of the Tile Setters/Tile Finishers Union Pension Fund, Insurance Fund, and Welfare Fund and to assume all obligations of the Employer provided for in this CBA The person signing on behalf of the Employer warrants and represents that they have the authority to bind the Employer and the principals.

(6) This Agreement supersedes all prior agreements and understandings between the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof.

(7) No provision of this Agreement shall be modified, amended or terminated, except by a writing specifically referring to this Agreement and signed by all of the parties hereto.

(8) This Agreement constitutes the entire agreement between both parties and concludes all collective bargaining negotiations for the full term hereof and any automatic extensions and renewals thereof. It is agreed that all matters desired by any of the parties have been presented, discussed and incorporated herein or rejected.

Effective Date: June 3, 2021

The Association binds its affiliates herein now and thereafter during the term of this Agreement. Any Employer, who performs work within the jurisdiction of the Association, must sign in the section referenced below. In addition, all Employers must provide their Federal Identification number as provided under IRS form W-9, "Request for Taxpayer Identification Number and Certification" as annexed hereto.

## ARTICLE XXXI
## Complete Agreement

It is understood and agreed, with the exception of agreed upon past practices which shall be considered as part of this Agreement, that this CBA constitutes the entire Agreement between the parties. There are no supplemental agreements, oral or written, other than the provisions contained herein, except those that may be agreed to, in writing, signed by the parties. Any supplements to this Agreement hereinafter entered into by the parties shall be in writing and executed in the same manner of this document.

IN WITNESS OF THE AGREEMENT, authorized representatives of the respective parties have signed below:

GREATER NEW YORK AND
NEW JERSEY TILE CONTRACTORS
ASSOCIATION, INC.

_____ Paul Del Turco

Title: President

_____

Title:

LOCAL UNION NO. 7

_____
WILLIAM HILL
President

_____
MATT GUY
Secretary/Treasurer

# FOR THE INDEPENDENT EMPLOYER

## (Effective June 3, 2021 through June 2, 2025)

1.  The undersigned independent Employer acknowledges that they have read the Agreement between the Greater New York and New Jersey Tile Contractors Association, Inc. and the Tile Setters and Tile Finishers Union of New York and New Jersey of the International Union of Bricklayers and Allied Craftsmen, Local Union No. 7 (hereinafter the "Union"). The jurisdiction of this Agreement covers New York City, the State of New Jersey, Long Island, and the following upstate counties in the State of New York: Westchester, Rockland, Putnam, Orange, Sullivan, Dutchess and Ulster as set forth in the foregoing pages of said Collective Bargaining Agreement ("CBA") of which the independent Employer acknowledges they have received. The independent Employer agrees to abide and be absolutely bound by such Agreement or any modifications or amendments that maybe executed between the above parties during the term of said Agreement. The undersigned is affixing their signature in a dual capacity both on behalf of themselves and on behalf of the independent Employer and represents by their signature their authority to bind the firm, the principals and members thereof, as well as themselves.

2.  This Agreement shall be effective for the period June 3, 2021 to June 2, 2025 for the Greater New York and New Jersey Tile Contractors Association, Inc. This Agreement and any amendments hereto shall automatically renew itself and continue in full force and effect from year to year unless written notice of election to terminate or modify any provision of this Agreement is given by one (1) party by registered or certified mail, return receipt requested, and received at least three (3) months prior to the expiration of this Agreement, and unless such notice is received within the time herein specified, this Agreement shall continue from year to year thereafter until termination by either party upon ninety (90) days advance written notice.

3.  The Union shall maintain a list of Employer signatories to the CBA and agrees to supply the Associations with a copy of the current list of Employer signatories to the CBA on signing of the contract and as additional signatories are added.

## INDEPENDENT EMPLOYER SIGNATURE PAGE

Date: _____

Employer: _____

Name and Title: _____

Individually Signed:_____

Corporate Address:_____

_____

Telephone No.: _____

Fax No.: _____

Federal ID. No.: _____

E-Mail: _____

Accepted by: TILE SETTERS and TILE FINISHERS UNION OF NEW YORK and
NEW JERSEY, LOCAL UNION NO. 7

BY:_____
    Local Union No. 7 - Union Representative

Title: _____

# SCHEDULE "A"

## Wage Sheets

**TILE, MARBLE & TERRAZZO BAC LOCAL UNION NO. 7**
**OF NEW YORK & NEW JERSEY**
45-34 COURT SQUARE , LONG ISLAND CITY, NEW YORK 11101
PHONE (718) 786-7648   FAX (718) 472-2370

WAGE ALLOCATION FOR COLLECTIVE BARGAINING AGREEMENT JUNE 2, 2021 - JUNE 2, 2025
**EFFECTIVE: JUNE 7, 2021**

## TILE SETTER

(LOCAL 52 NY / NJ)

### ZONE 1-A

**MANHATTAN,  QUEENS, BRONX, BROOKLYN & STATEN ISLAND**

| Effective Date | 6/7/2021 | 12/6/2021 | 6/6/2022 | 12/5/2022 | 6/5/2023 | 12/4/2023 | 6/3/2024 | 12/2/2024 |
|---|---|---|---|---|---|---|---|---|
| Increase Due | $ 0.50 | $ 0.48 | $ 0.73 | $ 0.73 | $ 0.73 | $ 0.73 | $ 0.73 | $ 0.72 |
| **Hourly Wages** | **$ 61.37** | | | | | | | |
| Vacation | $ 4.79 | | | | | | | |
| Local Dues Check Off 1 | $ 1.95 | | | | | | | |
| Local Dues Check Off 2 | $ 1.22 | | | | | | | |
| Int'l Dues Check Off | $ 0.97 | | | | | | | |
| B.A.C.  P.A.C. | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| Local P.A.C. | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 |
| Defense Fund | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 |
| Building Fund | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| **Total Deductions** | **$ 9.09** | | | | | | | |

*The total deduction amount should be multiplied by the hours paid and then deducted from the net pay*

**Fringe Benefits:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Int'l Pension & PPA | $ 4.95 | | | | | | | |
| Local Pension | $ 4.10 | | | | | | | |
| Promotion | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 |
| IMI | $ 0.97 | | | | | | | |
| Local 7 Training Fund | $ 0.01 | | | | | | | |
| Annuity | $ 10.25 | | | | | | | |
| Welfare | $ 13.55 | | | | | | | |
| Retiree Welfare | $ 0.10 | | | | | | | |
| Supplemental | $ 2.00 | | | | | | | |
| **Total Fringe Benefits** | **$ 36.03** | | | | | | | |

| **Total Package** | **$ 97.40** | **$ 97.88** | **$ 98.61** | **$ 99.34** | **$ 100.07** | **$ 100.80** | **$ 101.53** | **$ 102.25** |
|---|---|---|---|---|---|---|---|---|

**Total Benefits and Deductions Due**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Straight | $ 45.12 | | | | | | | |
| Time and 10% LGA PLA | $ 48.62 | | | | | | | |
| Time and 15% LGA PLA | $ 50.37 | | | | | | | |
| Time and 5% (SCA) | $ 46.87 | | | | | | | |
| Time and a Quarter | $ 53.87 | | | | | | | |
| Time and a Half | $ 62.62 | | | | | | | |
| Double | $ 80.12 | | | | | | | |

| **PLEASE NOTE:** | YELLOW IS PAID AT HOURS PAID | BLUE IS PAID AT HOURS WORKED |
|---|---|---|

For a schedule of holidays and hours of overtime please refer to the Collective Bargaining Agreement
Please remit via the CRS system or mail to Daniel H. Cook Associates, 253 West 35th St. 12th Floor NY, NY 10001
Please make check payable to Local 7 Clearing Account

**TILE, MARBLE & TERRAZZO BAC LOCAL UNION NO. 7**
**OF NEW YORK & NEW JERSEY**
45-34 COURT SQUARE , LONG ISLAND CITY, NEW YORK 11101
PHONE (718) 786-7648   FAX (718) 472-2370

WAGE ALLOCATION FOR COLLECTIVE BARGAINING AGREEMENT JUNE 2, 2021 - JUNE 2, 2025
**EFFECTIVE: JUNE 7, 2021**

**TILE SETTER**
(LOCAL 52 NY / NJ)
**ZONE 2 A**
**Long Island, Westchester, and Rockland Counties in New York**
**Monmouth, Middlesex, Hunterdon, Sommerset, Mercer, Warren,**
**Sussex, Essex, Union, Hudson, Bergen, Passaic, and Morris Counties in New Jersey**

| Effective Date | 6/7/2021 | 12/6/2021 | 6/6/2022 | 12/5/2022 | 6/5/2023 | 12/4/2023 | 6/3/2024 | 12/2/2024 |
|---|---|---|---|---|---|---|---|---|
| Increase Due | $ 0.49 | $ 0.48 | $ 0.72 | $ 0.72 | $ 0.72 | $ 0.72 | $ 0.72 | $ 0.71 |
| Hourly Wages | $ 61.07 | | | | | | | |
| Vacation | $ 4.79 | | | | | | | |
| Local Dues Check Off 1 | $ 1.92 | | | | | | | |
| Local Dues Check Off 2 | $ 1.20 | | | | | | | |
| Int'l Dues Check Off | $ 0.96 | | | | | | | |
| B.A.C. P.A.C. | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| Local P.A.C. | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 |
| Defense Fund | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 |
| Building Fund | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| Total Deductions | $ 9.03 | | | | | | | |

*The total deduction amount should be multiplied by the hours paid and then deducted from the net pay*

**Fringe Benefits:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Int'l Pension & PPA | $ 4.95 | | | | | | | |
| Local Pension | $ 4.10 | | | | | | | |
| Promotion | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 |
| IMI | $ 0.96 | | | | | | | |
| Local 7 Training Fund | $ 0.01 | | | | | | | |
| Annuity | $ 9.25 | | | | | | | |
| Welfare | $ 13.55 | | | | | | | |
| Retiree Welfare | $ 0.10 | | | | | | | |
| Supplemental | $ 2.00 | | | | | | | |
| Total Fringe Benefits | $ 35.02 | | | | | | | |

| Total Package | $ 96.09 | $ 96.57 | $ 97.29 | $ 98.01 | $ 98.73 | $ 99.45 | $ 100.17 | $ 100.88 |
|---|---|---|---|---|---|---|---|---|

**Total Benefits and Deductions Due**

| Straight | $ 44.05 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| time and quarter | $ 52.54 | | | | | | | |
| Time and hallf | $ 61.02 | | | | | | | |
| Double | $ 77.99 | | | | | | | |

| PLEASE NOTE: | YELLOW IS PAID AT HOURS PAID    BLUE IS PAID AT HOURS WORKED |
|---|---|
| | For a schedule of holidays and hours of overtime please refer to the Collective Bargaining Agreement |
| | Please remit via the CRS system or mail to Daniel H. Cook Associates, 253 West 35th St. 12th Floor NY, NY 10001 |
| | Please make check payable to Local 7 Clearing Account |

**TILE, MARBLE & TERRAZZO BAC LOCAL UNION NO. 7**
**OF NEW YORK & NEW JERSEY**
45-34 COURT SQUARE , LONG ISLAND CITY, NEW YORK 11101
PHONE (718) 786-7648    FAX (718) 472-2370

WAGE ALLOCATION FOR COLLECTIVE BARGAINING AGREEMENT JUNE 2, 2021 - JUNE 2, 2025
## EFFECTIVE: JUNE 7, 2021
## TILE SETTER
(LOCAL 52 NY / NJ)
## ZONE 3-A
## ORANGE, PUTNAM, SULLIVAN. ULSTER, DUTCHESS COUNTIES

| Effective Date | | 6/7/2021 | | 12/6/2021 | | 6/6/2022 | | 12/5/2022 | | 6/5/2023 | | 12/4/2023 | | 6/3/2024 | | 12/2/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Increase Due | $ | 0.44 | $ | 0.43 | $ | 0.65 | $ | 0.64 | $ | 0.64 | $ | 0.64 | $ | 0.64 | $ | 0.63 |
| **Hourly Wages** | $ | **55.60** | | | | | | | | | | | | | | |
| Vacation | $ | 3.84 | | | | | | | | | | | | | | |
| Local Dues Check Off 1 | $ | 1.72 | | | | | | | | | | | | | | |
| Local Dues Check Off 2 | $ | 1.07 | | | | | | | | | | | | | | |
| Int'l Dues Check Off | $ | 0.86 | | | | | | | | | | | | | | |
| B.A.C.  P.A.C. | $ | 0.03 | $ | 0.03 | $ | 0.03 | $ | 0.03 | $ | 0.03 | $ | 0.03 | $ | 0.03 | $ | 0.03 |
| Local P.A.C. | $ | 0.01 | $ | 0.01 | $ | 0.01 | $ | 0.01 | $ | 0.01 | $ | 0.01 | $ | 0.01 | $ | 0.01 |
| Defense Fund | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 |
| Building Fund | $ | 0.02 | $ | 0.02 | $ | 0.02 | $ | 0.02 | $ | 0.02 | $ | 0.02 | $ | 0.02 | $ | 0.02 |
| **Total Deductions** | $ | **7.65** | | | | | | | | | | | | | | |

*The total deduction amount should be multiplied by the hours paid and then deducted from the net pay*

**Fringe Benefits:**

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Int'l Pension & PPA @ $1.50 | $ | 2.70 | | | | | | | | | | | | | | |
| Local Pension | $ | 4.10 | | | | | | | | | | | | | | |
| Promotion | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 | $ | 0.10 |
| IMI | $ | 0.86 | | | | | | | | | | | | | | |
| Local 7 Training Fund | $ | 0.01 | | | | | | | | | | | | | | |
| Annuity | $ | 7.00 | | | | | | | | | | | | | | |
| Welfare | $ | 13.55 | | | | | | | | | | | | | | |
| Retiree Welfare | $ | 0.10 | | | | | | | | | | | | | | |
| Supplemental | $ | 1.75 | | | | | | | | | | | | | | |
| **Total Fringe Benefits** | $ | **30.17** | | | | | | | | | | | | | | |

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Package** | $ | **85.77** | $ | **86.20** | $ | **86.85** | $ | **87.49** | $ | **88.13** | $ | **88.77** | $ | **89.41** | $ | **90.04** |

**Total Benefits and Deductions Due**

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Straight | $ | 37.82 | | | | | | | | | | | | | | |
| Time and 5% (SCA) | $ | - | | | | | | | | | | | | | | |
| Time and a Quarter | $ | 45.34 | | | | | | | | | | | | | | |
| Time and a Half | $ | 52.85 | | | | | | | | | | | | | | |
| Double | $ | 67.88 | | | | | | | | | | | | | | |

| **PLEASE NOTE:** | YELLOW IS PAID AT HOURS PAID    BLUE IS PAID AT HOURS WORKED |
|---|---|
| | For a schedule of holidays and hours of overtime please refer to the Collective Bargaining Agreement |
| | Please remit via the CRS system or mail to Daniel H. Cook Associates, 253 West 35th St. 12th Floor NY, NY 10001 |
| | Please make check payable to Local 7 Clearing Account |

**Tile, Marble, and Terrazzo  Apprentice Rates**
**EFFECTIVE: JUNE 7, 2021**
**SULLIVAN, ULSTER AND DUTCHESS IN NEW YORK**
**BURLINGTON, ATLANTIC, CAPE MAY, CUMBERLAND, CAMDEN, GLOUCESTER, SALEM IN NEW JERSEY**

| APPRENTICE PERCENTAGE | 40% | 45% | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 90% | 100% |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REQUIRED HOURS | 0-750 | 751-1500 | 1501-2250 | 2251-3000 | 3001-3750 | 3751-4500 | 4501-5250 | 5251-6000 | 6000-6750 | 6751-7500 | 7501 |
| HOURLY WAGES | $ 19.83 | $ 23.92 | $ 25.89 | $ 29.98 | $ 32.74 | $ 36.32 | $ 39.61 | $ 42.71 | $ 44.31 | $ 47.73 | $ 48.94 |
| VACATION | $ 1.00 | $ 1.13 | $ 1.25 | $ 1.38 | $ 1.50 | $ 1.63 | $ 1.75 | $ 1.88 | $ 2.00 | $ 2.25 | $ 2.50 |
| LOCAL DUES CHECK OFF 1 | $ 0.66 | $ 0.74 | $ 0.83 | $ 0.91 | $ 0.99 | $ 1.07 | $ 1.16 | $ 1.24 | $ 1.32 | $ 1.49 | $ 1.65 |
| LOCAL DUES CHECK OFF 2 | $ 0.41 | $ 0.46 | $ 0.52 | $ 0.57 | $ 0.62 | $ 0.67 | $ 0.72 | $ 0.77 | $ 0.82 | $ 0.93 | $ 1.03 |
| INT'L DUES CHECK OFF | $ 0.33 | $ 0.37 | $ 0.42 | $ 0.46 | $ 0.50 | $ 0.54 | $ 0.58 | $ 0.62 | $ 0.66 | $ 0.75 | $ 0.83 |
| B.A.C. P.A.C. | $ 0.01 | $ 0.01 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.03 | $ 0.03 |
| LOCAL P.A.C | $ - | $ - | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 |
| DEFENSE FUND | $ 0.04 | $ 0.05 | $ 0.05 | $ 0.06 | $ 0.06 | $ 0.07 | $ 0.07 | $ 0.08 | $ 0.08 | $ 0.09 | $ 0.10 |
| BUILDING FUND | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| DEDUCTION FROM NET PAY | $ 2.46 | $ 2.77 | $ 3.11 | $ 3.42 | $ 3.71 | $ 4.02 | $ 4.32 | $ 4.64 | $ 4.93 | $ 5.57 | $ 6.17 |

| FRINGE BENEFITS: | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| INT'L PENSION & PPA | $ 0.32 | $ 0.32 | $ 0.32 | $ 0.32 | $ 0.65 | $ 0.65 | $ 0.95 | $ 0.95 | $ 1.33 | $ 1.33 | $ 4.05 |
| LOCAL PENSION | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 4.10 | $ 4.10 | $ 4.10 |
| PROMOTION | $ 0.06 | $ 0.07 | $ 0.08 | $ 0.08 | $ 0.09 | $ 0.10 | $ 0.11 | $ 0.11 | $ 0.12 | $ 0.14 | $ 0.15 |
| IMI | $ 0.33 | $ 0.37 | $ 0.42 | $ 0.46 | $ 0.50 | $ 0.54 | $ 0.58 | $ 0.62 | $ 0.66 | $ 0.75 | $ 0.83 |
| LOCAL 7 TRAINING FUND | $ - | $ - | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 |
| ANNUITY | $ - | $ - | $ 1.00 | $ 1.00 | $ 2.00 | $ 2.50 | $ 3.00 | $ 4.00 | $ 2.00 | $ 6.75 | $ 11.00 |
| WELFARE | $ 12.55 | $ 12.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 |
| RETIREE WELFARE | $ - | $ - | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 |
| TOTAL FRINGE BENEFITS | $ 13.26 | $ 13.31 | $ 15.48 | $ 15.52 | $ 16.90 | $ 17.45 | $ 18.30 | $ 19.34 | $ 21.87 | $ 26.73 | $ 33.79 |

| TOTAL PACKAGE | $ 33.09 | $ 37.23 | $ 41.37 | $ 45.50 | $ 49.64 | $ 53.77 | $ 57.91 | $ 62.05 | $ 66.18 | $ 74.46 | $ 82.73 |
|---|---|---|---|---|---|---|---|---|---|---|---|

| BENEFITS & DEDUCTIONS | $ 15.72 | $ 16.08 | $ 18.59 | $ 18.94 | $ 20.61 | $ 21.47 | $ 22.62 | $ 23.98 | $ 26.80 | $ 32.30 | $ 39.96 |
|---|---|---|---|---|---|---|---|---|---|---|---|

**PLEASE NOTE:**          YELLOW IS PAID AT HOURS PAID          BLUE IS PAID AT HOURS WORKED

For a schedule of holidays and hours of overtime please refer to the Collective Bargaining Agreement
Please remit via the CRS system or mail to Daniel H. Cook Associates, 253 West 35th St. 12th Floor NY, NY 10001
Please make check payable to Local 7 Clearing Account

## TILE, MARBLE & TERRAZZO BAC LOCAL UNION NO.7
### OF NEW YORK & NEW JERSEY
45-34 COURT SQUARE, LONG ISLAND CITY, NEW YORK 11101
PHONE (718) 786-7648   FAX (718) 472-2370

### TILE APPRENTICE

### EFFECTIVE: JUNE 7, 2021

**Includes:  5 boroughs of NYC, Long Island, Westchester, Putnam, Rockland & Orange Counties in New York**
**Monmouth, Middlesex, Hunterdon, Sommerset, Mercer, Warren, Sussex, Essex, Union,**
**Hudson, Bergen, Passaic, and Morris Counties in New Jersey**

| APPRENTICE PERCENTAGE | 35% | 40% | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 90% | 100% |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REQUIRED HOURS | 0-750 | 751-1500 | 1501-2250 | 2251-3000 | 3001-3750 | 3751-4500 | 4501-5250 | 5251-6000 | 6001-6750 | 6751-7500 | 7501 |
| HOURLY WAGES | $ 20.84 | $ 25.56 | $ 32.68 | $ 37.50 | $ 40.99 | $ 44.30 | $ 47.82 | $ 52.63 | $ 55.35 | $ 59.34 | $ 61.37 |
| VACATION | $ 1.66 | $ 1.90 | $ 2.38 | $ 2.61 | $ 2.85 | $ 3.09 | $ 3.33 | $ 3.56 | $ 3.80 | $ 4.28 | $ 4.79 |
| LOCAL DUES CHECK OFF 1 | $ 0.68 | $ 0.78 | $ 0.98 | $ 1.07 | $ 1.17 | $ 1.27 | $ 1.37 | $ 1.46 | $ 1.56 | $ 1.76 | $ 1.95 |
| LOCAL DUES CHECK OFF 2 | $ 0.43 | $ 0.49 | $ 0.61 | $ 0.67 | $ 0.73 | $ 0.79 | $ 0.85 | $ 0.92 | $ 0.98 | $ 1.10 | $ 1.22 |
| INT'L DUES CHECK OFF | $ 0.34 | $ 0.39 | $ 0.49 | $ 0.53 | $ 0.58 | $ 0.63 | $ 0.68 | $ 0.73 | $ 0.78 | $ 0.87 | $ 0.97 |
| B.A.C. P.A.C. | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.03 | $ 0.03 |
| LOCAL P.A.C. | $  - | $  - | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 |
| DEFENSE FUND | $ 0.04 | $ 0.04 | $ 0.05 | $ 0.06 | $ 0.06 | $ 0.07 | $ 0.07 | $ 0.08 | $ 0.08 | $ 0.09 | $ 0.10 |
| BUILDING FUND | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| TOTAL DEDUCTIONS | $ 3.17 | $ 3.62 | $ 4.54 | $ 4.97 | $ 5.43 | $ 5.89 | $ 6.34 | $ 6.80 | $ 7.25 | $ 8.16 | $ 9.09 |

**FRINGE BENEFITS:**

| | 35% | 40% | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 90% | 100% |
|---|---|---|---|---|---|---|---|---|---|---|---|
| International Pension & PPA | $ 0.32 | $ 0.32 | $ 0.32 | $ 0.32 | $ 0.65 | $ 0.65 | $ 0.95 | $ 0.95 | $ 0.95 | $ 1.35 | $ 4.95 |
| LOCAL PENSION | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 4.10 | $ 4.10 | $ 4.10 |
| PROMOTION FUND | $ 0.04 | $ 0.04 | $ 0.05 | $ 0.06 | $ 0.06 | $ 0.07 | $ 0.07 | $ 0.08 | $ 0.08 | $ 0.09 | $ 0.10 |
| IMI | $ 0.34 | $ 0.39 | $ 0.49 | $ 0.53 | $ 0.58 | $ 0.63 | $ 0.68 | $ 0.73 | $ 0.78 | $ 0.87 | $ 0.97 |
| LOCAL 7 Training Fund | $  - | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 |
| ANNUITY | $  - | $  - | $ 1.00 | $ 1.00 | $ 2.00 | $ 3.00 | $ 4.00 | $ 4.00 | $ 2.00 | $ 6.75 | $ 10.25 |
| WELFARE | $ 12.55 | $ 12.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 | $ 13.55 |
| RETIREE WELFARE | $  - | $  - | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 |
| SUPPLEMENTARY FUND | $  - | $  - | $ 0.50 | $ 0.50 | $ 0.50 | $ 1.00 | $ 1.00 | $ 1.00 | $ 1.00 | $ 1.50 | $ 2.00 |
| TOTAL FRINGE BENEFITS | $ 13.25 | $ 13.30 | $ 16.02 | $ 16.07 | $ 17.45 | $ 19.01 | $ 20.36 | $ 20.42 | $ 22.57 | $ 28.32 | $ 36.03 |

| TOTAL PACKAGE | $ 34.09 | $ 38.96 | $ 48.70 | $ 53.57 | $ 58.44 | $ 63.31 | $ 68.18 | $ 73.05 | $ 77.92 | $ 87.66 | $ 97.40 |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Total Benefits and Deductions Due**

| | 35% | 40% | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 90% | 100% |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Straight | $ 16.42 | $ 16.92 | $ 20.56 | $ 21.04 | $ 22.88 | $ 24.90 | $ 26.70 | $ 27.22 | $ 29.82 | $ 36.48 | $ 45.12 |
| Time and 5% (SCA) | $ 17.20 | $ 17.73 | $ 21.55 | $ 22.04 | $ 23.96 | $ 26.08 | $ 27.95 | $ 28.49 | $ 31.01 | $ 37.98 | $ 46.87 |
| Time and a Quarter | $ 20.35 | $ 20.96 | $ 25.48 | $ 26.07 | $ 28.28 | $ 30.79 | $ 32.95 | $ 33.59 | $ 35.80 | $ 44.00 | $ 53.87 |
| Time and a Half | $ 24.28 | $ 25.00 | $ 30.41 | $ 31.10 | $ 33.67 | $ 36.67 | $ 39.20 | $ 39.95 | $ 41.77 | $ 51.51 | $ 62.62 |
| Double | $ 32.14 | $ 33.09 | $ 40.26 | $ 41.17 | $ 44.47 | $ 48.45 | $ 51.70 | $ 52.68 | $ 53.73 | $ 66.55 | $ 80.12 |

| PLEASE NOTE: | YELLOW IS PAID AT HOURS PAID     BLUE IS PAID AT HOURS WORKED |
|---|---|

For a schedule of holidays and hours of overtime please refer to the Collective Bargaining Agreement
Please remit via the CRS system or mail to Daniel H. Cook Associates, 253 West 35th St. 12th Floor NY, NY 10001
Please make check payable to Local 7 Clearing Account

**TILE, MARBLE & TERRAZZO BAC LOCAL UNION NO. 7**
**OF NEW YORK & NEW JERSEY**
45-34 COURT SQUARE , LONG ISLAND CITY, NEW YORK 11101
PHONE (718) 786-7648    FAX (718) 472-2370

WAGE ALLOCATION FOR COLLECTIVE BARGAINING AGREEMENT JUNE 2, 2021 - JUNE 2, 2025
**EFFECTIVE: JUNE 7, 2021**

## TILE FINISHER

Local 88 NY & Local 77 NJ

### ZONE 1-A

**MANHATTAN, QUEENS, BRONX, BROOKLYN & STATEN ISLAND**

| Effective Date | 6/7/2021 | 12/6/2021 | 6/6/2022 | 12/5/2022 | 6/5/2023 | 12/4/2023 | 6/3/2024 | 12/2/2024 |
|---|---|---|---|---|---|---|---|---|
| Increase Due | $ 0.50 | $ 0.40 | $ 0.60 | $ 0.59 | $ 0.60 | $ 0.59 | $ 0.60 | $ 0.59 |
| **Hourly Wages** | **$ 47.26** | | | | | | | |
| Vacation | $ 3.39 | | | | | | | |
| Local Dues Check Off 1 | $ 1.60 | | | | | | | |
| Local Dues Check Off 2 | $ 1.00 | | | | | | | |
| Int'l Dues Check Off | $ 0.80 | | | | | | | |
| B.A.C.  P.A.C. | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 | $ 0.03 |
| Local P.A.C. | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 | $ 0.01 |
| Defense Fund | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 |
| Building Fund | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 | $ 0.02 |
| **Total Deductions** | **$ 6.95** | | | | | | | |

*The total deduction amount should be multiplied by the hours paid and then deducted from the net pay*

**Fringe Benefits:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Int'l Pension & PPA @ $ 2.75 | $ 4.95 | | | | | | | |
| Local Pension | $ 4.10 | | | | | | | |
| Promotion | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 | $ 0.10 |
| IMI | $ 0.80 | | | | | | | |
| Local 7 Training Fund | $ 0.01 | | | | | | | |
| Annuity | $ 7.25 | | | | | | | |
| Welfare | $ 13.55 | | | | | | | |
| Retiree Welfare | $ 0.10 | | | | | | | |
| Supplemental | $ 1.75 | | | | | | | |
| **Total Fringe Benefits** | **$ 32.61** | | | | | | | |

| **Total Package** | **$ 79.87** | **$ 80.27** | **$ 80.87** | **$ 81.46** | **$ 82.06** | **$ 82.65** | **$ 83.25** | **$ 83.84** |
|---|---|---|---|---|---|---|---|---|

**Total Benefits and Deductions Due**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Straight | $ 39.56 | | | | | | | |
| Time and 5% (SCA) | $ 41.04 | | | | | | | |
| Time and 10% (LGA PLA) | $ 42.52 | | | | | | | |
| Time and 15% (LGA PLA) | $ 44.00 | | | | | | | |
| Time and a Quarter | $ 46.96 | | | | | | | |
| Time and a Half | $ 54.36 | | | | | | | |
| Double | $ 69.17 | | | | | | | |

| **PLEASE NOTE:** | YELLOW IS PAID AT HOURS PAID    BLUE IS PAID AT HOURS WORKED |
|---|---|
| | For a schedule of holidays and hours of overtime please refer to the Collective Bargaining Agreement |
| | Please remit via the CRS system or mail to Daniel H. Cook Associates, 253 West 35th St. 12th Floor NY, NY 10001 |
| | Please make check payable to Local 7 Clearing Account |

WAGE ALLOCATION FOR COLLECTIVE BARGAINING AGREEMENT JUNE 2,2021 - June 2, 2025

### *EFFECTIVE 06/07/2021*

### TILE FINISHER
(LOCAL 77 NJ & 88 NY)

### ZONE 2 A

**Long Island, Westchester, and Rockland Counties in New York**
**Monmouth, Middlesex,Hunterdon, Sommerset, Mercer, Warren,**
**Sussex, Essex, Union, Hudson, Bergen, Passaic, and Morris Counties in New Jersey**

| Effective Date | 6/7/2021 | 12/6/2021 | 6/6/2022 | 12/5/2022 | 6/5/2023 | 12/4/2023 | 6/3/2024 | 12/2/2024 |
|---|---|---|---|---|---|---|---|---|
| Increase Due | $ 0.49 | $ 0.39 | $ 0.58 | $ 0.59 | $ 0.58 | $ 0.59 | $ 0.59 | $ 0.59 |
| **Hourly Wages** | **$ 46.89** | | | | | | | |
| Vacation | $ 3.50 | | | | | | | |
| Local Dues Check Off 1 | $ 1.57 | | | | | | | |
| Local Dues Check Off 2 | $ 0.98 | | | | | | | |
| Int'l Dues Check Off | $ 0.79 | | | | | | | |
| B.A.C. P.A.C. | $ 0.03 | | | | | | | |
| Local P.A.C. | $ 0.01 | | | | | | | |
| Defense Fund | $ 0.10 | | | | | | | |
| Building Fund | $ 0.02 | | | | | | | |
| **Total Deductions** | **$ 7.00** | $    - | $    - | $    - | $    - | $    - | $    - | $    - |

*The total deduction amount should be multiplied by the hours paid and then deducted from the net pay*

**Fringe Benefits:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Int'l Pension & PPA @ $ 2.75 | $ 4.95 | | | | | | | |
| Local Pension | $ 4.10 | | | | | | | |
| Promotion | $ 0.10 | | | | | | | |
| IMI | $ 0.79 | | | | | | | |
| Local 7 Training Fund | $ 0.01 | | | | | | | |
| Annuity | $ 6.50 | | | | | | | |
| Welfare | $ 13.55 | | | | | | | |
| Retiree Welfare | $ 0.10 | | | | | | | |
| Supplemental | $ 1.75 | | | | | | | |
| **Total Fringe Benefits** | **$ 31.85** | $    - | $    - | $    - | $    - | $    - | $    - | $    - |

| **Total Package** | **$ 78.74** | $ 79.13 | $ 79.71 | $ 80.30 | $ 80.88 | $ 81.47 | $ 82.06 | $ 82.65 |
|---|---|---|---|---|---|---|---|---|

**Total Benefits and Deductions Due**

| Straight | $ 38.85 | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
|---|---|---|---|---|---|---|---|---|
| time and quarter | $ 46.08 | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
| Time and hallf | $ 53.31 | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
| Double | $ 67.76 | $    - | $    - | $    - | $    - | $    - | $    - | $    - |

| **PLEASE NOTE:** | YELLOW IS PAID AT HOURS PAID | BLUE IS PAID AT HOURS WORKED |
|---|---|---|

**For a schedule of holidays and hours of overtime please refer to the Collective Bargaining Agreement**
**Please remit via the CRS system or mail to Daniel H. Cook Associates, 253 West 35th St. 12th Floor NY, NY 10001**
**Please make check payable to Local 7 Clearing Account**

**TILE, MARBLE & TERRAZZO BAC LOCAL UNION NO. 7**
**OF NEW YORK & NEW JERSEY**
45-34 COURT SQUARE , LONG ISLAND CITY, NEW YORK 11101
PHONE (718) 786-7648    FAX (718) 472-2370

WAGE ALLOCATION FOR COLLECTIVE BARGAINING AGREEMENT JUNE 2,2021 - June 2, 2025
*EFFECTIVE 06/07/2021*

**TILE FINISHER**
(LOCAL 88 NY & LOCAL 77 NJ)
**ZONE 3-A**
**ORANGE, PUTNAM, SULLIVAN. ULSTER, DUTCHESS COUNTIES**

| Effective Date | 6/7/2021 | 12/6/2021 | 6/6/2022 | 12/5/2022 | 6/5/2023 | 12/4/2023 | 6/3/2024 | 12/2/2024 |
|---|---|---|---|---|---|---|---|---|
| Increase Due | $ 0.46 | $ 0.36 | $ 0.54 | $ 0.55 | $ 0.54 | $ 0.55 | $ 0.54 | $ 0.54 |
| **Hourly Wages** | $ 45.74 | | | | | | | |
| Vacation | $ 2.54 | | | | | | | |
| Local Dues Check Off 1 | $ 1.46 | | | | | | | |
| Local Dues Check Off 2 | $ 0.91 | | | | | | | |
| Int'l Dues Check Off | $ 0.73 | | | | | | | |
| B.A.C. P.A.C. | $ 0.03 | | | | | | | |
| Local P.A.C. | $ 0.01 | | | | | | | |
| Defense Fund | $ 0.10 | | | | | | | |
| Building Fund | $ 0.02 | | | | | | | |
| **Total Deductions** | $ 5.80 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

*The total deduction amount should be multiplied by the hours paid and then deducted from the net pay*

**Fringe Benefits:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Int'l Pension & PPA @ $1.50 | $ 2.70 | | | | | | | |
| Local Pension | $ 4.10 | | | | | | | |
| Promotion | $ 0.10 | | | | | | | |
| IMI | $ 0.73 | | | | | | | |
| Local 7 Training Fund | $ 0.01 | | | | | | | |
| Annuity | $ 4.60 | | | | | | | |
| Welfare | $ 13.55 | | | | | | | |
| Retiree Welfare | $ 0.10 | | | | | | | |
| Supplemental | $ 1.25 | | | | | | | |
| **Total Fringe Benefits** | $ 27.14 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Total Package** | $ 72.88 | $ 73.24 | $ 73.78 | $ 74.33 | $ 74.87 | $ 75.42 | $ 75.96 | $ 76.50 |

**Total Benefits and Deductions Due**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Straight | $ 32.94 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Time and 5% (SCA) | | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Time and a Quarter | $ 39.27 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Time and a Half | $ 45.60 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Double | $ 58.25 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| PLEASE NOTE: | YELLOW IS PAID AT HOURS PAID    BLUE IS PAID AT HOURS WORKED |
|---|---|
| | For a schedule of holidays and hours of overtime please refer to the Collective Bargaining Agreement |
| | Please remit via the CRS system or mail to Daniel H. Cook Associates, 253 West 35th St. 12th Floor NY, NY 10001 |
| | Please make check payable to Local 7 Clearing Account |

# SCHEDULE "B"

# "B" RATE AGREEMENT

# RESIDENTIAL, AFFORDABLE HOUSING, MARKET RECOVERY AND LIGHT COMMERCIAL AGREEMENT
## "B-Classification"

## ARTICLE I
## PARTIES

This Agreement ("Agreement") is entered into this _____ day of _____, 20____, between _____ (hereinafter referred to as "the Employer"), and the INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL NO. 7 of New York and New Jersey (hereinafter referred to as "the Union").

## ARTICLE II
## DURATION - TERMINATION - AMENDMENT

This Agreement shall be effective from June 3, 2021 to June 2, 2025 and shall continue in full force and effect and shall automatically continue yearly thereafter, unless and until written notice is provided as required in Article XXX, Section 1 of the CBA.

## ARTICLE III
## SCOPE OF WORK

A. This Agreement shall cover projects (as defined below) within the State of New York and New Jersey.

B. Residential projects are defined for the purpose of this Agreement as projects involving the construction, alteration and/or repair of a structure or structures in which a person or persons reside, such as a single-family home, tract housing, duplex, townhouse or apartment building or condominium buildings of no more than fifteen (15) stories in height or as classified by the Department of Housing and Urban Development ("HUD") as a residential building. The Residential "B" Tile Setter/Tile Finisher wage rate is only applicable to residential projects with a bid of less than $500,000.00 for labor costs at the project. Covered work on residential projects will be compensated at Residential "B" Tile Setter/Tile Finisher wage rate.

C. Light commercial projects are defined for the purpose of this Agreement as work in connection with the construction, alteration and/or repair of commercial buildings limited to free standing restaurants, strip malls, gas stations, convenience stores, car dealerships, and three (3) star or less hotels or motels or other similar work upon prior written agreement with the Union with a bid of less than $400,000.00 for labor costs at the project. Performance of covered work on light commercial projects as defined herein shall be compensated at the Low and Mid-Market "B" rate.

D. Tile Tenders may be employed on Residential, Affordable Housing and Light Commercial projects as defined in this Schedule.

On "B"-rate work, one hundred (100%) percent of the work force shall be furnished by the Employer consisting of newly organized employees. Such employees must apply for membership to the Union within seven (7) days of his/her initial hire.

E. White box units in luxury condos, bid as single unit jobs, shall be considered to be single family homes subject to the "B"-rate. White box units refers to single apartments in buildings which already have a Certificate of Occupancy. Performance of covered work on work described in this paragraph shall be compensated at the Residential "B" Tile Setter/Tile Finisher wage rate.

F. Affordable Housing projects are defined for the purpose of this Agreement as work in connection with the construction, alteration or repair of affordable housing projects with a 70/30 (market value/affordable housing) requirement or more. Performance of covered work on work described in this paragraph shall be compensated at the Residential "B" Tile Setter/Tile Finisher wage rate.

G. All other assignments that are approved by the Union through a Market Recovery application submitted by the Employer.

H. This Agreement shall cover all work performed by Tile Setters and Tile Finishers listed in this CBA under Article III, Section 1.

## ARTICLE IV
## WAGES

A. Employers may request permission to use the above wage rates on a project-by-project basis which exceed the limitations contained in paragraphs III.B and III.C above. The Union has the absolute and sole right to either approve or deny such request.

The new "B" worker will be committed for a period of three (3) years to this program. After three (3) years in which the "B" worker performed, at a minimum, 750 hours of covered work in each of the three (3) years, they can apply to the "A"-rate apprentice program and gain direct entry at a rate of forty (40%) percent of the Finisher classification. The parties have agreed to establish this secondary wage rate in an effort to recapture market share. This is a new program that will require the Association and Independent Employer to sign the standard CBA, as well this separate Agreement. The program will be strictly monitored by both parties. Violations of the new program will result, after Trade Board hearing, in reimbursement of wages and benefits, as well as fines being levied. The parties agree to further discuss this issue through the Joint Labor-Management Committee.

UNION:

By: William Hill, President

DATE:

8 - 9 - 21

TILE ASSOCIATION:

By: Paul DelTurco, President

DATE:

08/11/21

# SCHEDULE "C"

## Standards of Excellence

# STANDARDS OF EXCELLENCE

The purpose of these Standards of Excellence is to reinforce the pride of every construction worker and the commitment to be the most skilled, most productive and safest workforce available to construction Employers and users in the City of New York. It is the commitment of every affiliated local union to use our training and skills to produce the highest quality work and to exercise safe and productive work practices.

The rank-and-file members represented by the affiliated local unions acknowledge and adopt the following standards:

> ➢ **Provide a full day's work for a full day's pay;**
> ➢ **Safely work towards the timely completion of the job;**
> ➢ **Arrive to work on time and work until contractual quitting time;**
> ➢ **Adhere to contractual lunch and break times;**
> ➢ **Promote a drug and alcohol-free work site;**
> ➢ **Work in accordance with all applicable safety rules and procedures;**
> ➢ **Allow union representatives to handle job site disputes and grievances without resort to slowdowns, or unlawful job disruptions;**
> ➢ **Respect management directives that are safe, reasonable and legitimate;**
> ➢ **Respect the rights of co-workers;**
> ➢ **Respect the property rights of the owner, management and contactors.**

The Unions affiliated with the New York City Building and Construction Trades Council will expect the signatory contractors to safely and efficiently manage their jobs and the unions see this as a corresponding obligation of the contractors under these Standards of Excellence. The affiliated unions will expect the following from its signatory contractors:

> ➢ **Management adherence to the collective bargaining agreements;**
> ➢ **Communication and cooperation with the trade foremen and stewards;**
> ➢ **Efficient, safe and sanitary management of the job site;**
> ➢ **Efficient job scheduling to mitigate and minimize unproductive time;**
> ➢ **Efficient and adequate staffing by properly trained employees by trade;**
> ➢ **Efficient delivery schedules and availability of equipment and tools to ensure efficient job progress;**
> ➢ **Ensure proper blueprints, specifications and layout instructions and material are available in a timely manner;**
> ➢ **Promote job site dispute resolution and leadership skills to mitigate such disputes;**
> ➢ **Treatment of all employees in a respectful and dignified manner acknowledging their contributions to a successful project.**

The affiliated unions and their signatory contractors shall ensure that both the rank-and-file members and the management staff shall be properly trained in the obligations undertaken in these Standards of Excellence.