# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY (CAMDEN)

| | |
|---|---|
| KIMO Tile @ Marble, LLC, | ) Adv. No. 24-01602-JNP |
| | ) Chapter 11 |
| Plaintiff. | ) |
| | ) |
| vs. | ) |
| | ) |
| Tile Setters & Tile Finishers | ) Camden, New Jersey |
| Union of New York, et al, | ) November 21, 2024 |
| | ) |
| Defendants. | ) |
| | ) |

TRANSCRIPT OF DECISION
BEFORE THE HONORABLE JERROLD N. POSLUSNY, JR.
UNITED STATES BANKRUPTCY JUDGE

NO APPEARANCES

Audio Operator:        KATHLEEN RYAN

Transcribed by:        DIANA DOMAN TRANSCRIBING, LLC
                       P.O. Box 129
                       Gibbsboro, New Jersey  08026-0129
                       Phone:   (856) 435-7172
                       Fax:     (856) 435-7124
                       Email:   dianadoman@comcast.net

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

I N D E X

| DECISION | PAGE |
|---|---|
| By the Court | 3 |

I N D E X

1       (Decision commenced at this time.)

2       THE COURT: Okay. This is KIMO Tile versus Local 7.
3  It's Adversary Number 24-1602.

4       The Debtor filed this adversary complaint against
5  the Tile Setters and Tile Finishers Union of New York and New
6  Jersey, Local 7, and the International Union of Bricklayers
7  and Allied Craft Workers -- I'm going to refer to that, all,
8  as Local 7 -- as well as several union-affiliated entities
9  that the parties basically refer to, and I will refer to, as
10 the Pension Fund, and I'll refer to both the Pension Fund and
11 Local 7 as the defendants.

12      At the same time it filed the complaint, the Debtor
13 filed an application for an order to show cause, seeking a
14 temporary restraining order, as well as an extension of the
15 automatic stay to the Debtor's principal, Sasha Kissoondath.
16 I'll refer to him as the Principal.

17      Defendants filed separate objections to the order to
18 show cause, and I had a hearing on November 12th.  The Debtor
19 is in the business of installing ceramic tile and marble for
20 construction projects in Pennsylvania and New Jersey.  At
21 least in New Jersey, many of the projects that the Debtor
22 works on are public jobs, either with municipalities or the
23 State of New Jersey.

24      The Principal is responsible for all of the Debtor's
25 business activities, including the review of plans and the

1  scope of work, pricing, contract negotiation, contract
2  administration, buying supplies, employee management,
3  collections and all other administrative matters.  The
4  Debtor's employees, as I noted a moment ago, for the New
5  Jersey jobs, are supplied by Local 7.
6          Prior to the petition date, the Pension Fund filed
7  two lawsuits against the Debtor and the Principal.  I note
8  that there is a third lawsuit, but that's only against the
9  Debtor and the estate.  The two lawsuits against the Debtor
10 and the Principal are to recover pension contributions
11 allegedly owed by the Debtor to the Pension Fund, and both
12 those lawsuits are still pending.
13         According to the Debtor, the defendants reached out
14 to the Debtor's business contacts and encouraged them to cease
15 doing business with the Debtor until the pension dispute is
16 resolved.  The defendants also allegedly provided one of the
17 Debtor's former customers with a substitute contractor, after
18 the defendants convinced that customer to cancel its contract
19 with the Debtor.
20         Also, the complaint alleges that Local 7 is
21 withholding employees from the Debtor and threatening to
22 remove workers from the Union for not reporting the Debtor's
23 alleged violation of labor laws.  Local 7 asserts that it is
24 not threatening employees and that workers are choosing not to
25 accept jobs with the Debtor for their own reasons.

Decision by the Court                                       6

1    Although the application, itself, sought three forms
2    of relief, the Debtor, at the hearing, noted that it currently
3    is only seeking two types of relief, first, to enjoin the
4    Union from contacting customers of the Debtor, and second, the
5    Debtor requests an extension of the automatic stay to the
6    Principal related to the two lawsuits.
7    The Debtor argues that extension of the stay is
8    warranted, because the Principal is the sole member and source
9    of funding for the Debtor and, as such, he must put his
10   undivided time and attention to the Debtor's business and
11   reorganization.  The Debtor submits that the Principal is able
12   and willing to make contributions to the Debtor in order to
13   fund a plan, and further, that creditors should not be able to
14   reach the Debtor's funds by attacking the only source of those
15   funds, outside of bankruptcy, that being the Principal.
16   We will begin with the request for an extension of
17   the automatic stay.  Courts in this Circuit have developed a
18   three-step analysis to determine whether an extension of the
19   automatic stay to a non-debtor is proper.  That's from <u>In re:</u>
20   <u>Union Trust of Philadelphia</u>, 460 B.R. 644, EDPA, 2011, citing
21   <u>In re: Philadelphia Newspapers</u>, 407 B.R. 606.  That's also
22   from the EDPA, 2009.
23   First, I must consider whether I have jurisdiction
24   to issue the proposed injunction.  Then, I must determine
25   whether it's proper to extend the automatic stay under these

1  circumstances, and, finally, I determined whether it's a
2  proper exercise of my discretion to issue an injunction under
3  Section 105(a). And that's from both the <u>Union Trust</u> case and
4  the <u>Philadelphia Newspapers</u> case.
5  Although the facts considered in each step may
6  overlap, each step is, nevertheless, distinct and
7  independently necessary, and that is, again, from the <u>Union
8  Trust</u> case, citing <u>In re: Combustion Engineering</u>, 391 F. 3rd,
9  190, Third Circuit decision, 2004.
10  Finally, each of the three steps must be satisfied
11  for there to be an injunction. Starting with jurisdiction, in
12  order to enjoin a State Court proceeding, a bankruptcy court
13  is required to conclude that it has jurisdiction over those
14  proceedings and not just the instant adversary proceeding in
15  which the motion for an injunction was filed. And that's from
16  the <u>Union Trust</u> case, citing the <u>Philadelphia Newspapers</u> case.
17  Section 105(a) permits bankruptcy courts to issue
18  any order, process or judgement that is necessary or
19  appropriate to carry out the provisions of the Code, but does
20  not provide an independent source of Federal subject matter
21  jurisdiction. Therefore, before considering the merits of any
22  105(a) injunction, a bankruptcy court must establish that it
23  has subject matter jurisdiction to enter the injunction.
24  That's <u>In re: W.R. Grace</u>, 591 F. 3rd, 164, Third Circuit,
25  2009.

1    Bankruptcy jurisdiction extends to four types of
2    proceedings, but the only potential basis of jurisdiction,
3    here, is related to jurisdiction, because none of the pending
4    lawsuits arise under the Code or in this bankruptcy case.
5    Under <u>Pacor v. Higgins</u>, the lawsuits are -- I
6    conclude the lawsuits are related to the bankruptcy case,
7    because the parties seem to agree that if the Pension Fund is
8    successful, the Debtor will be head jointly and severally
9    liable for the judgments against the Principal.  Put another
10   way, a judgment against the Principal will result in a
11   judgment against the estate, and therefore, the pending
12   lawsuits are related to the bankruptcy, and I conclude I have
13   subject matter jurisdiction.
14   Turning to extension of the stay to non-debtors, by
15   its term, Section 362(a) stays actions only against the Debtor
16   and property of the Debtor.  That's <u>Union Trust</u> case, quoting
17   <u>McCartney v. Integra</u>, 106 F. 3rd 506, Third Circuit case,
18   1997.  The stay typically does not extend to protect sureties,
19   guarantors, co-obligors or others with a similar legal or
20   factual nexus to the Debtor.  That's, again, from the <u>Union</u>
21   <u>Trust</u> case.
22   However, the Third Circuit has indicated it's proper
23   to issue a preliminary injunction extending the stay to non-
24   debtor third parties under "unusual circumstances."  That's
25   from the <u>McCartney</u> case.  In that case, the Court cited

approvingly to two circumstances, the first being, where there is such identity between the Debtor and the third-party defendant, that the Debtor may be said to be the real party defendant, and that a judgment against a third party will, in effect, be a judgment against the Debtor.

The second -- I'm sorry -- courts have extended the stay on this basis, most often where there is a guarantor indemnification or similar obligations, and that's citing the Union Trust case, and that case is citing In re: American Film Technologies, 175 B.R. 847, Bankruptcy District of Delaware, 1994 and In re: Family Health Services, 105 B.R. 937, Bankruptcy Central District of California, 1989.

However, while courts have extended the stay in cases, where there was a right of indemnification, this is only where the Debtor's indemnification obligations are absolute. That's Forcine Concrete Construction v. Manning Equip. Sales & Services, 426 B.R. 520, Eastern District of Pennsylvania, 2010, citing Stanford v. Foamex, 2009 Westlaw 1033607, Eastern District of Pennsylvania, 2009 and In re: Midatlantic Handling, 304 B.R. 111, Bankruptcy District of New Jersey, 2003.

In Forcine, the Court found that there was no contractual right to indemnification for the non-debtor, and that under Michigan law, the Debtor would be required to indemnify the officer only if a director or officer of a

corporation has been successful on the merits or, otherwise, in defense of an action, suit or proceeding.  The Court reasoned that, because there was no indication that such obligations would be absolute in this case, the prospect of indemnification does not provide the "unusual circumstance" required by McCartney to extend the automatic stay to a non-debtor.

The second circumstance to extend the stay is where stay protection is essential to the Debtor's reorganization efforts.  That's from the McCartney case.  Courts have extended the stay on this basis, when the Principal was the only person suited to effectively formulate funding and carry out the Debtor's plan of reorganization, and his undivided time, attention and efforts were essential to the reorganization.  That's from McCartney, citing, In re: Lazarus Burman, 161 B.R. 891, Bankruptcy, Eastern District New York, 1993 and In re: Steven P. Nelson, D.C., P.A., 140 B.R. 814, Bankruptcy Middle District of Florida, 1992.

And the usual circumstances that typically warrant extending the stay, however, are not present in this case.  First, the Principal does not have an absolute right to indemnification from the Debtor.  The Debtor argues that the Principal has certain state law indemnity rights, which, if asserted against the Debtor would significantly deplete the estate, however, like in the W.R. Grace case, the state law

1   indemnity rights to which the Debtor refers are not absolute.
2   If the Pension Fund is successful in its lawsuits, the
3   Principal would have to file a separate intervening lawsuit to
4   impose an indemnity obligation to the Debtor.
5        Next, extending the stay to the Principal is not
6   necessary to protect the Debtor's efforts to reorganize.  The
7   Debtor contends, that is the Debtor's managing member, the
8   Principal is the only person able to navigate the Debtor
9   through a successful reorganization and, therefore, cannot
10  afford to spend his time, attention and resources defending
11  himself against the lawsuits.  This argument, however, was not
12  persuasive.  The lawsuits pending against the Principal would
13  require a minimal amount of the Principal's time.
14       For example, from what I understand, there are only
15  two depositions needed in the cases, one of the Principal, and
16  the other of the bookkeeper, and I question whether the
17  Principal would need to attend that deposition.  Further,
18  there is a need for some e-discovery that may require the
19  Principal to turn over electronic devices, but in my
20  experience, such discovery typically lasts a short period of
21  time and can often be done outside of regular business hours.
22       However, determining those issues and whether e-
23  discovery should be allowed to proceed and the boundaries of
24  that discovery, those should all be left to the court in the
25  Eastern District of New York, where the actual lawsuit is

1  pending.

2  The Debtor also asserts that extension of the stay

3  the Principals weren't warranted, because the Principal is

4  willing to fund the Debtor's plan.  However, his willingness

5  to fund the plan here is not sufficient, because the Debtor

6  has failed to show a reasonable likelihood that the Debtor's

7  financial -- I'm sorry -- the Principal's financial assistance

8  will be needed to successfully reorganize.  In fact, the

9  Debtor points out that it has a viable business, and that it

10  has a constant stream of good, profitable work with state and

11  local governments.

12  Based on these allegations, it appears that it is

13  reasonably likely that the Debtor can operate as a going

14  concern and successfully reorganize on its own.  Moreover,

15  even if I were to extend the stay for a limited time, the

16  trial would eventually move forward against the Principal, and

17  any judgment would lead to the same hardships for the

18  Principal.

19  Therefore, an extension of stay to the Principal is

20  not warranted, and that request for relief is denied.

21  Turning, now, to a preliminary injunction, although

22  the Debtor has failed to satisfy the second step of the

23  inquiry, I will address whether a preliminary injunction

24  standard has been met, for the sake of completeness of this

25  decision.  As I am about to discuss, I conclude that the

1  Debtor did not meet this standard.

2 Section 105(a) gives courts authority to issue
3 injunctions to effectuate the purposes of the automatic stay
4 under Section 362(a). That's <u>Union Trust</u>, 460 B.R. at page
5 658. To obtain a preliminary injunction in these
6 circumstances, the Movant must satisfy, or the Court must
7 consider, the following factors. One, whether the Movant has
8 shown a reasonable probability of success on the merits. Two,
9 whether the Movant will be irreparably harmed or injured by
10 denial of the relief. Three, whether granting preliminary
11 relief will result in even greater harm to the non-moving
12 party, and four, whether granting the preliminary relief will
13 be in the public interest.

14 Only if the first two factors of this standard are
15 satisfied must the Court proceed to consider the third and
16 fourth factors. In the bankruptcy context, reasonably
17 likelihood of success is equivalent to the Debtor's ability to
18 reorganize. That's from <u>Union Trust</u> at page 60, but I did
19 omit some quotations and citations.

20 The injunctive relief, under Section 105 is an
21 extraordinary remedy and should only be used if it is
22 essential to assist and aid the rehabilitation process of the
23 Debtor. That's <u>Scott Cable Communications</u>, 227 B.R. 596.
24 That's a bankruptcy decision, District of Connecticut, 1999,
25 quoting, <u>In re: Goldberg</u>, 221 B.R. 907, Bankruptcy Middle

1  District of Florida, 1998.

2           Here, the Debtor has shown a reasonable probability
3  of success for its bankruptcy case, because it alleges that it
4  continues to generate business and can operate as a going
5  concern during its reorganization, and that it has prospects
6  to file a reorganizing plan.  However, the Debtor has not
7  demonstrated that it will be irreparably harmed if the stay is
8  not extended to the Principal.  The Debtor argues there will
9  be irreparable harm, because the Principal will be forced to
10 spend time defending himself against the lawsuits, and he will
11 have to turn over his electronic devices that he uses for
12 work.

13          But, as discussed above, it appears the time the
14 Principal will have to dedicate to these lawsuits and
15 discovery will be minimal.  Further, should the stay be
16 extended, there would also be harm to the Pension Fund,
17 because there would be delay in its litigation, which should
18 otherwise move forward, because the Principal is not a debtor
19 in bankruptcy.

20          Moreover, granting an injunction would be against
21 the public interest.  It's public policy to honor the
22 distinction between a company in bankruptcy and its principal,
23 who is not.  The plaintiff should be entitled to pursue a
24 party in litigation, unless that party is in bankruptcy.  The
25 Debtor has not alleged facts, here, to show why this case

1  should lead me to different conclusions.

2  For all of these reasons, the Court finds this
3  additional reason why it should not extend the stay to the
4  Principal.

5  Turning, now, to whether I should grant a
6  preliminary injunction with regard to Local 7.  As I discussed
7  a moment ago, I look to four factors, when determining whether
8  to grant a preliminary injunction.  Those are, the likelihood
9  of success, whether there will be irreparable harm to the
10 Debtor, a comparison of harms that would come to Local 7 and
11 public policy.

12 While there may be some likelihood of success,
13 either in getting to a confirmed plan or in prevailing in this
14 adversary proceeding, the Debtor has not demonstrated to me
15 any irreparable harm, absent preliminary injunction.  The
16 Debtor has argued that it will suffer monetary damages, if
17 Local 7 were to reach out to third parties to discuss the
18 Debtor, basically in the form of lost profits and, perhaps,
19 for goods and supplies it purchased in order to work on jobs,
20 that it might, in the end, not be able to use.

21 For that reason, alone, I could conclude that a
22 preliminary injunction is not appropriate, because the only
23 damages would be monetary.  But I note, that it also appears
24 that there would be harm to Local 7, in that it could create
25 an unworkable situation where it is not able to reach out to

1  other parties to discuss issues related to the Debtor's jobs

2  or to discuss other jobs that don't involve the Debtor,

3  without fear of having violated an order.  Plus, there could

4  be disputes over whether Local 7 or a job owner initiated such

5  contact and lead back to many disputes before me in a he

6  said/she said battle.

7         Finally, I do not think that an injunction, here, is

8  within the public interest.  As I mentioned at the hearing, it

9  appears to me that the Norris-LaGuardia Act applies in this

10 case, and that I do not have jurisdiction to issue injunction.

11 Beyond that, one of the purposes of that act is to prevent

12 courts from getting involved in labor disputes by issuing

13 injunctions.  And that's from <u>Burlington Railroad vs. The

14 Board of Maintenance of Way Employers</u>, 481 U.S. 429, Supreme

15 Court, 1987.

16         Therefore, the weight of the factors, when I

17 consider preliminary injunction against Local 7, falls in

18 favor of denying the Debtor's request.  Moreover, I do note

19 that I have doubts whether I even have jurisdiction to impose

20 the injunction under the Norris-LaGuardia Act.  Section 4 of

21 that act explicitly strips federal courts of jurisdiction to

22 issue injunctions against certain Union activities.  The

23 Norris-LaGuardia Act is at 29 U.S.C., and what I am referring

24 to, now, is Section 104.

25         The Act provides, in pertinent part, no court of the

1    United States shall have jurisdiction to issue any restraining
2    order or temporary or permanent injunction in any case
3    involving or growing out of a labor dispute to prevent any
4    person from ceasing or refusing to perform any work or to
5    remain in any relation of employment.  The labor dispute,
6    under the act, is defined as any controversy concerning terms
7    or conditions of employment or concerning the association or
8    representation of persons in negotiating, fixing, maintaining,
9    changing or seeking to arrange terms or conditions of
10   employment, regardless of whether or not the disputants stand
11   in the proximate relation of employer and employee.
12        Courts have found that payments to the employee
13   pension fund constitute a term or condition of employment,
14   when those payments are a term of a collective bargaining
15   agreement between the Union and an employer.  For example, <u>In
16   re: Crowe Associates</u>, 713 F.2d 211, a Sixth Circuit decision,
17   1983, <u>In re: Petrusch</u>, 667 F.2d 297, Second Circuit, 1981, <u>In
18   re: Trump Entertainment Resort</u>, 534 B.R. 93, Bankruptcy
19   District of Delaware, 2015.
20        Further, any dispute surrounding these pension fund
21   payments is a labor dispute under the Act, and that's, again,
22   from the cases I just mentioned.
23        The underlying dispute between the Debtor and the
24   defendants stem from the Debtor's alleged failure to make
25   payments to the Pension Fund, pursuant to the collective

Decision by the Court                                            18

1  bargaining agreement between the parties.  This fits within

2  the definition of a labor dispute, and, as such, I believe

3  that I do not have jurisdiction to enjoin Local 7 or its

4  workers from refraining to provide manpower to the Debtor, and

5  for this additional reason, I deny the Debtor's request for

6  injunctive relief.

7          For all of these reasons, I conclude that it is

8  inappropriate to the extend the stay to the Principal, and

9  that it is also inappropriate to enter an injunction related

10 to Local 7.  I ask counsel for either Local 7 or the Pension

11 Funds to prepare and circulate a proposed form of order.  If

12 the parties can't agree upon the form of order, you may submit

13 your differing forms of order for me to consider.

14         (Decision concluded at this time.)

15                            * * *

19

**C E R T I F I C A T I O N**

     I, Jacqueline Mullica, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings on November 21, 2024 in the above-entitled matter.

/s/Jacqueline Mullica          November 26, 2024

JACQUELINE MULLICA          DATE

DIANA DOMAN TRANSCRIBING, LLC